This is an appeal from the trial court's denial of a petition to confirm the report of sale and distribution of certain property to appellants Paul B. Javaras and Hema K. Prasad, who were the high bidders of the property at a mortgage foreclosure sale. The property had been foreclosed by plaintiff, Commercial Credit Loans, Inc. (Commercial), after mortgagee, Maria Espinoza, defaulted on the mortgage. On appeal, appellants contend that: (1) the trial court erred in finding that confirmation of the sale would be an "unjust result" based on Espinoza's alleged attempts to redeem on the date of the sale; (2) the trial court erred in finding that confirmation of the sale would be "unconscionable" based on the sum bid at the sale and the evidence presented at the confirmation hearing; (3) the trial court erred in ordering the plaintiff to accept redemption from Espinoza; and (4) the trial court erred in prejudging the position of the parties and matters at issue prior to hearing all of the evidence and argument, thereby prejudicing appellants.
BACKGROUND
On March 3, 1995, Commercial filed a complaint seeking to foreclose a mortgage executed by defendant, Maria Espinoza, alleging that Espinoza defaulted on her mortgage payments. On June 5, 1995, the trial court entered a judgment of foreclosure by default in the amount of $9,112.53. The order provided that Espinoza's right to redeem the judgment amount would expire on November 5, 1995. Espinoza was not personally served, and the order of default was entered against her by way of publication service in the Chicago *Page 925 
Daily Law Bulletin. The mortgage foreclosure sale was scheduled for November 7, 1995, at which appellants were the successful bidders with a bid of $10,800.
Joined by appellants, Commercial filed a notice of sale and a motion to confirm the report of the sale. On November 21, 1995, Espinoza filed an objection to the approval of the sale in which she argued that she had appeared at the foreclosure sale with a certified check in the amount of the foreclosure judgment, but that she did not discover that she would need more than the judgment amount because she does not speak English very well. Espinoza also stated that she had called several people listed on the notice of sale to try and verify the amount that she would need to bring to the foreclosure sale.
At the hearing on the motions, an appraiser testified that the value of the property at issue was $69,000 at the time of the hearing. Further evidence presented at the hearing indicated that, on two separate occasions, Espinoza called the law firm that handled the foreclosure sale for Commercial and told a Spanish-speaking collection manager, Sergio Magana, that she was getting the money together to pay for the property. At the hearing, Magana testified that, when Espinoza called him, he told her to call back when she had the money. Espinoza called Magana a third time on the date of the sale. Magana testified that he put Espinoza on hold and told an attorney in the office that Espinoza was on the phone, had the money and wanted to pay. The attorney instructed Magana to tell Espinoza that her period of redemption was already past due. Magana testified that when he returned to the phone, Espinoza had already hung up. Magana also stated that he never told Espinoza the amount that she would need to claim her property. On cross-examination, Magana stated that he did not tell Espinoza where and when the sale would be held. However, in an affidavit dated February 15, 1996, Magana stated that he had told Espinoza when and where the sale would be held.
Espinoza also testified at the hearing. A transcript of her testimony was not included in the record on appeal. However, in her affidavit dated January 30, 1996, Espinoza states that she learned about the foreclosure sale when she received a notice of sale. One week prior to the date of the sale and three days prior to the date of the sale, Espinoza called the number listed on the notice for in order to get information about the sale. Espinoza further states that she spoke to a Spanish-speaking male employee, Mr. Cortez,[1] and informed him that she had $9,112.53, and wanted to know what to do with it. Cortez *Page 926 
told her to bring the money in cash to his office and she would be able to save her house. Espinoza told Cortez that she would call him back. After speaking to some of her friends, she decided to purchase a cashier's check instead. Espinoza further states in her affidavit that she spoke to Cortez four more times during the week. He told her that if she wanted to pay with a cashier's check she would have to bring it to the sale. Espinoza further states that she brought a cashier's check of $9,112.53 to the foreclosure sale at approximately 10 a.m. At the sale, she spoke to a woman and showed her the certified check. However, the woman told her that it was too late and that she should go to the offices of Harris Harris, which is Commercial's law firm. Espinoza arrived at the law firm at approximately 10:30 a.m. There she was told that Cortez was not in the office and that she should go to Commercial's offices. Espinoza went to Commercial's offices and was told that her house had already been sold.
The trial court denied confirmation of the sale pursuant to section 15-1508(b) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1508(b) (West 1992)) and ordered that Commercial accept redemption from Espinoza. The trial court found that the terms of the sale were unconscionable because the value of the property was six times more than what was bid at the sale. The trial court further found that Espinoza told Commercial that she had the money and asked for directions on how to get the money to them, but she was "shrugged off because of her inability to communicate effectively with Commercial." Thus, the trial court concluded that justice would not otherwise be done were Espinoza to lose her home because of what the trial court considered to be unfair tactics. Third-party bidders Javaras and Prasad appealed.
OPINION
 I
Appellants first contend that the trial court erred in finding that confirmation of the sale would be an "unjust result" based on defendant's alleged attempts to redeem on the date of sale. Appellants also argue that Espinoza acted negligently and untimely in asserting her statutory right to redeem. Appellants further argue that the statutory right to redeem must be strictly construed and that allowing Espinoza to redeem after she failed to comply with the redemption statute undermines the legislature's intent to promote the integrity of judicial sales. Espinoza responds that the trial court *Page 927 
properly found that she was not negligent, that Commercial employed unfair tactics and that confirmation of the sale would result in an injustice.
It is well settled in Illinois law that a judicial foreclosure sale is not complete until it has been approved by the trial court. Fleet Mortgage Corp. v. Deale,287 Ill. App.3d 385, 388, 678 N.E.2d 35 (1997); Grubert v.Cosmopolitan National Bank, 269 Ill. App.3d 408, 411,645 N.E.2d 560 (1995). The high bid received at a judicial sale is merely an irrevocable offer to purchase the property, and acceptance of the offer takes place when the trial court confirms the sale. Citicorp Savings v. First Chicago Trust Co.,269 Ill. App.3d 293, 645 N.E.2d 1038 (1995). Under section 15-1508(b) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1508
(b) (West 1992)) (Act), the trial court shall confirm a foreclosure unless: (1) there has been a failure to give proper notice; (2) the terms of sale were unconscionable; (3) the sale was conducted fraudulently; or (4) justice was otherwise not done. A court is justified in disapproving a judicially mandated foreclosure sale if unfairness is shown which is prejudicial to an interested party. Citicorp 269 Ill. App.3d at 300. Trial courts have broad discretion in approving or disapproving sales made at their direction. Citicorp, 269 Ill. App.3d 293,645 N.E.2d 1038.
In the instant case, appellants contend that the trial court protected Espinoza from her negligence in failing to comply with the statutory redemption proceedings. We disagree. Rather, our review of the record shows that the trial court carefully considered the statutory factors provided in section 15-1508(b) of the Act and, based on the evidence presented, decided that the terms of the sale were unconscionable and that justice would not be done if the sale were confirmed. We believe that the evidence contained in the record on appeal supports the trial court's conclusion.
The record on appeal does not contain a transcript of Espinoza's testimony, and we note that Javaras and Prasad, as appellants, were obligated to provide this court with a record that is sufficient to sustain their claim of error. Grubertv. Cosmopolitan National Bank, 269 Ill. App.3d at 412. However, Espinoza's affidavit, which was included in the appendix to appellants' brief, indicates that Espinoza made several attempts to contact Commercial through its attorneys and attempted to redeem her property and attend the foreclosure sale. Espinoza told Sergio Magana that she had the money and asked for instructions on how to pay the debt or attend the foreclosure sale. Magana testified that Espinoza did not say that she had the money but only stated that she was getting the money. However, the record reflects that the trial court did not find his testimony to be entirely *Page 928 
credible because parts of his testimony conflicted with his previously sworn affidavit. Based on these facts and the fact that the value of the property at issue was six times more than what was bid at the sale, the trial court concluded that justice would not otherwise be done if the foreclosure sale was confirmed and Espinoza was not allowed to redeem. After reviewing the record, we cannot say that the trial's court's decision was erroneous.
 II
Appellants further contend that the trial court erred in finding that confirmation of the sale would be unconscionable. Appellant argues that inadequate sale price alone is insufficient cause to refuse confirmation of a foreclosure sale. Espinoza replies that appellants' argument is irrelevant because, here, the trial court did not base its decision solely on the inadequate sale price. We agree with Espinoza.
Section 15-1508(b) of the Act provides that the trial court shall confirm a foreclosure unless the terms of the sale were unconscionable. 735 ILCS 5/15-1508(b) (West 1992). The purchase price of a property at a foreclosure sale is one of the "terms of sale" as that phrase is used in the statute.Berkeley Properties, Inc. v. Balcor Pension InvestorsII, 227 Ill. App.3d 992, 999, 592 N.E.2d 63 (1992). The sale price alone may not be enough to deny confirmation of a foreclosure sale. See Lyons Savings Loan Ass'n. v. GashAssociates, 189 Ill. App.3d 684, 545 N.E.2d 412 (1989);Resolution Trust Corp. v. Holtzman, 248 Ill. App.3d 105,618 N.E.2d 418 (1993); Cragin Federal Bank for Savingsv. American National Bank Trust Co., 262 Ill. App.3d 115,633 N.E.2d 1011 (1994). However, in the instant case, inadequate sale price was not the sole basis of the trial court's decision. The trial court found that the value of the property at issue was six times what was bid at the foreclosure sale and that such a disparity in the prices was unconscionable. Moreover, the trial court stated more than one reason for refusing to confirm the sale. The trial court stated in pertinent part:
 "I believe and I find that the terms of the sale are unconscionable for a number of reasons. ***
 I also believe that justice would not otherwise be done in this case were Miss Espinoza to lose her home because of what I consider to be unfair tactics."
The trial court then proceeded to explain what it considered to be unfair tactics based on the evidence that was presented. The trial concluded that justice would not otherwise be done if the sale was confirmed because Espinoza attempted to redeem but was "shrugged off" because of her inability to speak Englishin addition to the fact that the sale price was unconscionable. *Page 929 
 III
Appellants next argue that the trial court erred in ordering the plaintiff to accept redemption from Espinoza. Espinoza responds that appellants do not have standing to challenge this court order. We agree.
Standing requires injury to a legally cognizable interest.Almgren v. Rush-Presbyterian-St. Luke's Medical Center,162 Ill.2d 205, 216, 642 N.E.2d 1264 (1994). A party must assert its own legal rights and interests, rather than base a claim for relief upon the rights of third parties. Helmigv. John F. Kennedy Community Consolidated School District No.129, 241 Ill. App.3d 653, 658, 610 N.E.2d 152 (1993).
Espinoza cites Citicorp Savings v. First Chicago TrustCo., 269 Ill. App.3d 293, 645 N.E.2d 1038 (1995). In our view, Citicorp is instructive. In Citicorp, the appellate court concluded that third-party bidders did not have standing to raise a claim that the trial court was without authority to reinstate the mortgagee's mortgage because the statutory reinstatement period had expired. In reply, appellants argue that Citicorp is distinguishable because reinstatement is different from redemption. We note that, inCiticorp, the statutory right of the mortgagees, the Fronteras, to redeem the property expired on February 23, 1993. However, on February 17, 1993, Citicorp forwarded to the Fronteras' attorney a letter indicating that Citicorp would accept a "pay off" or a "reinstatement" payment through March 15, 1993. Citicorp, 269 Ill. App.3d at 295. We are unpersuaded by appellants' argument, in effect, that a "pay off" rather than a "reinstatement" made a difference as to the issue of standing in Citicorp.
In our view, the statutory differences between the two processes are irrelevant to this issue. We recognize that, as certified high bidders in the foreclosure sale of Espinoza's property, appellants have some interest in litigation involving the property. Citicorp, 269 Ill. App.3d at 301. High bidders should be able to pursue their appeal. SeeCiticorp, 269 Ill. App.3d at 299. However, as was stated by the appellate court in Citicorp, the high bidders' interest evaporates upon the trial court's determination that the judicial sale will not be confirmed. Citicorp, 269 Ill. App.3d at 301. "What the trial court decides to do with the property after it determines the sale will not be confirmed is a matter in which the [high bidders] have no discernible legal interest." Citicorp, 269 Ill. App.3d at 301. Instead, that issue is one solely between the mortgagee and the mortgagor.
 IV
Appellants' final contention is that the trial court prejudged *Page 930 
the positions of the parties and matters at issue prior to hearing all of the evidence and argument and indicated a prejudice in favor of Espinoza and against appellants. We believe appellants' argument is without merit.
Initially we note that, during a nonjury trial, the comments of a trial judge are allowed greater latitude than would be acceptable were a jury present. City of Chicago v.Westphalen, 93 Ill. App.3d 1110, 1121, 418 N.E.2d 63
(1981). Furthermore, not every comment or unguarded expression by a trial judge will support a claim of prejudice; a showing of prejudicial effect is required. Westphalen, 93 Ill. App.3d at 1121.
In the instant case, appellants point to two instances in which they claim the trial court indicated a prejudice against them. Reviewing each colloquy and the context within which the remarks were made, we fail to see any impropriety by the trial court or any prejudice to the defendant. The first remarks cited by the trial court were made during a pretrial hearing when the court stated its view that the parties should attempt to settle. However, the court clearly stated that the parties could have an evidentiary hearing if they could not settle.
Appellants also cite to comments made by the court at a hearing that was held on March 1, 1997. The court's comments must be put in context. At the hearing, the parties appeared to have argument on a motion in limine. However, Espinoza suggested they begin an evidentiary hearing at which to present the appraiser, who was present in court. The trial court preferred to reschedule the evidentiary hearing because it was in the middle of a trial on another matter. However, Espinoza expressed concern at the expense of having to bring the appraiser back to court at another time. At that point, the trial court stated:
 "I think it's unfortunate that the costs are being spent on this kind of case. There isn't a single case cited that has anything factually similar to this situation here. *** I already proposed a way to resolve this case."
Again, we see no error in the trial court's comments. The court's comments were precipitated by Espinoza's concern over the legal costs of the case. In our view, the remarks evidence the court's attempt to encourage settlement and avoid costly litigation. Moreover, appellants fail to point to any prejudice they suffered a result of the comments. *Page 931 
For the reasons stated herein, the judgment of the circuit court is affirmed.
Affirmed.
GORDON and LEAVITT, JJ., concur.
[1] Testimony at the hearing indicated that "Cortez" is the alias used by Magana in his employment as a collection agent.