No. 2--07--0140      Filed:  6-4-08

---

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

---

| | | |
|---|---|---|
| JP MORGAN CHASE BANK, as Successor in Interest to Chase Manhattan Bank USA, N.A., | ) ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 06--CH--227 |
| | ) | |
| BRECK FANKHAUSER, ELAINE FANKHAUSER, STEVE L. GEORGAS, and LEA GEORGAS, | ) ) ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (National City Mortgage Co., Defendant-Appellant; Pathfinder Holdings, LLC, Intervenor-Appellee). | ) ) ) | Honorable Michael J. Colwell, Judge, Presiding. |

---

JUSTICE HUTCHINSON delivered the opinion of the court:

Plaintiff, JP Morgan Chase Bank, as successor in interest to Chase Manhattan Bank USA, N.A. (JP Morgan), filed the instant mortgage foreclosure action against defendants Breck Fankhauser, Elaine Fankhauser, Steve L. Georgas, and Lea Georgas (referred to collectively as mortgagors). JP Morgan also named as a defendant National City Mortgage Co. (National City), which also had a mortgage interest in the same property under a separate loan that National City had made to mortgagors. None of the defendants appeared in court to defend the action, and on May 12, 2006, the trial court entered a default judgment and a judgment of foreclosure and sale. On July 6,

2006, intervenor, Pathfinder Holdings, LLC (Pathfinder), was the winning bidder at the sheriff's sale. On July 28, 2006, National City moved pursuant to section 2--1301(e) of the Code of Civil Procedure (the Code) (735 ILCS 5/2--1301(e) (West 2006)) to vacate the May 12, 2006, default judgment and the order of foreclosure and sale. On November 3, 2006, the trial court granted the motion and vacated the May 12, 2006, orders. On December 1, 2006, Pathfinder moved the trial court to reconsider and argued that National City's motion to vacate should have been treated as a petition for relief pursuant to section 2--1401 of the Code (735 ILCS 5/2--1401 (West 2006)) because it was brought more than 30 days after the entry of the May 12, 2006, orders. On January 12, 2007, the trial court granted Pathfinder's motion to reconsider, vacated its November 3, 2006, order, and confirmed the sale and distribution of the property.

National City appeals from the trial court's January 12, 2007, order. National City contends that (1) the trial court erred in construing its July 28, 2006, filing as a petition to vacate pursuant to section 2--1401 of the Code rather than a motion under section 2--1301(e) of the Code; (2) even if its filing was properly characterized as a section 2--1401 petition to vacate, the trial court erred in determining that it had not satisfied the requirements for vacatur; and (3) the trial court erred in confirming the foreclosure sale. For the reasons that follow, we affirm in part, vacate in part, and remand for further proceedings.

The record documents the following proceedings relevant to the disposition of this appeal. On February 10, 2006, JP Morgan filed a foreclosure complaint against mortgagors and National City. The complaint alleged that, on June 28, 2002, mortgagors had executed and delivered to JP Morgan a $26,500 note. Mortgagors also executed and delivered to JP Morgan a mortgage on the property located at 1428 South 9th Street in St. Charles. JP Morgan alleged that mortgagors were

in default on the note after failing to make installment payments for three months. JP Morgan requested the trial court to take an account of the sums owed by mortgagors and to order payment by a date certain. JP Morgan further requested that, absent payment of the amount due, the mortgaged property be sold to satisfy the indebtedness. The complaint also alleged that National City was a mortgagee under a separate mortgage recorded September 30, 2003, on the same property to secure a note of $301,500.

On February 15, 2006, National City was served with notice of the complaint through its agent, CT Corporation System. On February 24, 2006, and March 3, 2006, mortgagors received service of the complaint.

On May 12, 2006, after notice was given and after neither mortgagors nor National City appeared in court to defend the action, the trial court granted JP Morgan's motion for default. The trial court also entered a judgment of foreclosure providing that mortgagors owed JP Morgan $31,050.23 in principal, interest, fees, and costs. The order provided that the period of redemption would expire on June 13, 2006, at which time the property could be sold at public auction. The order further provided that "there is no just cause for delaying the enforcement of this Judgment, or an appeal therefrom." The order additionally provided that the trial court "retain[ed] jurisdiction *** for the purpose of enforcing this Judgment, for the purpose of amending the amounts due to [JP Morgan] to reflect receipts, disbursements and charges which are made or accrue after the entry of this judgment and prior to sale and for the purpose of appointing or continuing a Receiver herein during the period of redemption."

On June 28, 2006, JP Morgan gave notice to mortgagors and National City that the property would be sold by sheriff's sale on July 6, 2006.

On July 14, 2006, JP Morgan moved the trial court to confirm the sale and to enter an order for possession. Attached to the motion was a sheriff's report of sale indicating that the property had been sold to Pathfinder for the sum of $32,212.40.

On July 28, 2006, National City moved pursuant to section 2--1301(e) of the Code to vacate the default judgment and the judgment of foreclosure and sale. National City further requested the trial court to void the foreclosure sale and to grant it leave to file an answer to JP Morgan's complaint. National City argued that it did not become aware of the entry of the default judgment until July 17, 2006, when it received JP Morgan's motion to confirm the sale. National City argued that the trial court had the discretion to vacate the default judgment because it had not yet entered a final order disposing of the case. National City argued that a judgment of foreclosure was not a final judgment; instead, National City argued that the final judgment in a foreclosure action is the order confirming or denying the foreclosure sale. National City further argued that it had a meritorious defense to the complaint in that its mortgage interest was superior to JP Morgan's. Finally, National City argued that the $32,212.40 bid at the sheriff's sale was grossly inadequate in view of the fair market value of the property.

In support of its motion, National City attached the affidavit of Dorothy Thomas, the supervisor of National City's default litigation department. National City also attached a copy of a motion filed by JP Morgan in Breck and Elaine Fankhauser's bankruptcy proceeding in which it stated that its mortgage lien was a "SECOND mortgage lien." National City also attached a copy of the settlement statement prepared at the closing on National City's loan transaction, which indicated that National City had loaned mortgagors $301,500. The settlement statement reflected that a portion of the loan proceeds was used to pay off JP Morgan's loan. National City also attached a July

26, 2006, broker's price opinion indicating that the fair market value of the property was $385,000. Finally, National City attached a copy of Breck and Elaine Fankhauser's August 2005 bankruptcy petition filed in federal court, indicating that the property had a market value of $325,000.

On August 9, 2006, the trial court granted Pathfinder leave to file an appearance as an intervenor.

On November 3, 2006, the trial court granted National City's motion to vacate and entered an order vacating the judgments of default and foreclosure. The trial court further vacated the July 6, 2006, judicial sale. The trial court granted National City leave to file an answer or otherwise plead to JP Morgan's complaint.

On December 1, 2006, Pathfinder filed a motion requesting the trial court to reconsider its November 3, 2006, order. In its motion, Pathfinder argued that National City's motion to vacate should have been brought under section 2--1401 of the Code rather than section 2--1301(e) of the Code. Pathfinder noted that the trial court's May 12, 2006, default and foreclosure judgments contained language pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), making them immediately enforceable and appealable. Because National City did not file its motion to vacate until 60 days after the entry of the May 12, 2006, order, Pathfinder argued that National City had to comply with the requirements of section 2--1401 of the Code to obtain any relief. Pathfinder argued that National City failed to allege that it had exercised due diligence in the proceeding or that it had a meritorious defense to the underlying complaint.

On January 12, 2007, the trial court granted Pathfinder's motion to reconsider and vacated its November 3, 2006, order. The trial court also confirmed the sheriff's sale. In its written order, the trial court indicated that its ruling was based upon section 2--1401 of the Code. The trial court's

order further reflected that its ruling was based on the "pleadings and oral arguments." National City filed a timely notice of appeal.

National City first contends that the trial court erred on reconsideration when it construed its motion to vacate as a petition brought pursuant to section 2--1401 of the Code. National City argues that section 2--1401 governs a petition seeking relief from a final judgment more than 30 days after judgment was entered. National City argues that the trial court's judgment of foreclosure was not final and appealable until such time as the trial court confirmed the sale of the property and directed the distribution. National City further contends that the presence of Rule 304(a) language in the judgment of foreclosure did not alter the nonfinal nature of the judgment, because the trial court expressly retained jurisdiction over the sale and the distribution of the proceeds. National City concludes that, because the judgment of foreclosure was not a final order, the trial court should have construed its motion to vacate as one brought pursuant to section 2--1301(e) of the Code.

We begin by noting our standard of review. National City has appealed from the trial court's order granting Pathfinder's motion to reconsider. Generally, a motion to reconsider is a matter addressed to the trial court's discretion, and we will not reverse its ruling on such a motion absent an abuse of discretion. Duresa v. Commonwealth Edison Co., 348 Ill. App. 3d 90, 97 (2004). However, where a motion to reconsider raises a question of whether the trial court erred in its previous application of existing law, we review de novo the trial court's determinations of legal issues. Duresa, 348 Ill. App. 3d at 97.

Whether the trial court properly characterized National City's motion to vacate as a section 2--1401 petition rather than a section 2--1301(e) motion depends on whether the trial court's May 12, 2006, judgment of foreclosure was a final order. Section 2--1301(e) of the Code provides that

the trial court "may in its discretion, before final order or judgment, set aside any default, and may on motion filed within 30 days after entry thereof set aside any final order or judgment." 735 ILCS 5/2--1301(e) (West 2006). Meanwhile, section 2--1401 of the Code governs a party's request for relief from a final judgment where more than 30 days have passed since entry of the final judgment. 735 ILCS 5/2--1401 (West 2006). Here, National City filed its motion to vacate the judgment of foreclosure on July 28, 2006, which was more than 30 days after the trial court's entry of the judgment of foreclosure. If the trial court's judgment of foreclosure was a nonfinal order, then National City could properly move to vacate the order pursuant to section 2--1301(e) even though more than 30 days had passed since its entry. However, if the trial court's judgment was indeed a final order, then National City could seek relief only through section 2--1401 of the Code because more than 30 days had passed since its entry.

As JP Morgan correctly notes, our supreme court has stated that a judgment ordering the foreclosure of a mortgage is not final and appealable until the trial court enters an order approving the sale and directing the distribution. In re Marriage of Verdung, 126 Ill. 2d 542, 555-56 (1989). A judgment of foreclosure is not final and appealable because it does not dispose of all the issues between the parties and it does not terminate the litigation. Marion Metal & Roofing Co. v. Mark Twain Marine Industries, Inc., 114 Ill. App. 3d 33, 35 (1983). The order confirming the sale, however, does conclusively establish the purchaser's right to the property and gives final approval to the proposed distribution of the sale proceeds. Margaretten & Co. v. Martinez, 193 Ill. App. 3d 223, 227-28 (1990). Accordingly, the order confirming the sale, rather than the judgment of foreclosure, is the final and appealable order in a foreclosure case. Marion Metal, 114 Ill. App. 3d at 35.

However, a judgment of foreclosure is final and immediately appealable where it contains language pursuant to Rule 304(a) (210 Ill. 2d R. 304(a)) that there is no just reason for delaying enforcement or appeal. Verdung, 126 Ill. 2d at 555-56; In re Estate of Yucis, No. 2--06--1225, slip op. at 9-10 (May 29, 2008); Plaza Bank v. Kappel, 334 Ill. App. 3d 847, 850 n.2 (2002); Bell Federal Savings & Loan Ass'n v. Bank of Ravenswood, 203 Ill. App. 3d 219, 223 (1990). In the instant case, the judgment of foreclosure contained a Rule 304(a) finding that "there [was] no just cause for delaying the enforcement of this Judgment, or an appeal therefrom." In view of the above-cited authorities, we conclude that the trial court's May 12, 2006, judgment of foreclosure was a final judgment.

In so holding, we reject National City's argument that the judgment of foreclosure was not final because the trial court specifically reserved jurisdiction to enforce the judgment and to determine the amount due to JP Morgan as a result of disbursements and receipts occurring prior to the sale. Pursuant to section 15--1603(d) of the Illinois Mortgage Foreclosure Law (the Foreclosure Law), a mortgagee is entitled to reimbursement at the time of redemption for any additional expenses incurred after the judgment of foreclosure. 735 ILCS 5/15--1603(d) (West 2006). In view of the mortgagee's statutory right to reimbursement, we do not believe that the trial court's order retaining jurisdiction to oversee such reimbursement rendered its judgment of foreclosure nonfinal. Whether it expresses it or not, the trial court always retains the statutory authority, following the entry of the judgment of foreclosure, to provide for such reimbursement. 735 ILCS 5/15--1603(d)(2) (West 2006). Therefore, despite the presence of this provision in the judgment of foreclosure, we conclude the trial court's Rule 304(a) finding rendered the judgment final and appealable. See Verdung, 126 Ill. 2d at 555-56; Plaza Bank, 334 Ill. App. 3d at 850 n.2.

In light of our conclusion that the May 12, 2006, judgment of foreclosure was a final judgment, and given that National City's motion to vacate was filed more than 30 days after the entry of the final judgment, the trial court properly considered the motion as one seeking relief pursuant to section 2--1401 of the Code. We thus turn to consider whether National City was entitled to relief under section 2--1401. As already noted, section 2--1401 provides a statutory procedure to seek relief from final judgments "after 30 days from the entry thereof." 735 ILCS 5/2--1401 (West 2006). "To be entitled to relief under section 2--1401, the petitioner must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2--1401 petition for relief." Smith v. Airoom, Inc., 114 Ill. 2d 209, 220-21 (1986). The quantum of proof necessary to sustain a section 2--1401 petition is a preponderance of the evidence. Smith, 114 Ill. 2d at 221. Whether a section 2--1401 petition should be granted lies within the sound discretion of the trial court, depending on the facts and equities presented. Smith, 114 Ill. 2d at 221.

Based on our review of the record, we hold that the trial court did not abuse its discretion when it determined on reconsideration that National City was not entitled to relief under section 2--1401. Even if National City had a meritorious defense to JP Morgan's action, the record plainly establishes that National City did not exercise due diligence in presenting its defense to the trial court. Due diligence under section 2--1401 requires the petitioner to have a reasonable excuse for failing to act within the appropriate time. Smith, 114 Ill. 2d at 222. Section 2--1401 does not relieve the consequences of a litigant's own mistake or negligence, and a litigant is not entitled to relief " 'unless he shows that through no fault or negligence of his own, the error of fact or the existence

of a valid defense was not made to appear to the trial court.' " Smith, 114 Ill. 2d at 222, quoting Brockmeyer v. Duncan, 18 Ill. 2d 502, 505 (1960). The litigant must show that the failure to defend against the action was the result of an excusable mistake and that "under the circumstance he acted reasonably, and not negligently, when he failed to initially resist the judgment." Smith, 114 Ill. 2d at 222.

Here, the record reflects that JP Morgan properly served National City with a summons and a copy of its complaint on February 15, 2006, by leaving a copy with its registered agent, CT Corporation. Additionally, JP Morgan continued to send National City notices of the proceedings, including a notice of its motion for the entry of a judgment of foreclosure, a notice of the foreclosure sale, and a notice of its motion to confirm the foreclosure sale. National City does not deny that the summons and other notices were received by its registered agent. Despite receiving proper notice of the proceedings, National City did not appear in court to defend the action until July 28, 2006. By this time, the trial court had already entered a judgment of foreclosure and the foreclosure sale had already occurred. The only explanation that National City offered for its untimely appearance in the case was that "the appropriate personnel of [National City] did not become aware of the ex-parte judgment entered by default *** or of the judgment of foreclosure *** until on or about July 17, 2006, when [National City] received a Motion to Confirm Sale." Such an explanation is insufficient to satisfy the due diligence requirement of section 2--1401. See Smith, 114 Ill. 2d at 224 (holding that corporate defendant had failed to diligently present defense in the trial court despite its assertion that " 'its duly authorized officers or agents never received the summons and complaint' "). The record plainly establishes the National City's untimely appearance was the result of its own mistake and negligence.

National City notes that Illinois courts are sometimes willing to relax the due diligence requirement when necessary to prevent the unjust entry of default judgments and to effect substantial justice. Smith, 114 Ill. 2d at 226-27. This is especially true where the defaulting party is not given notice of the entry of the judgment of default. Smith, 114 Ill. 2d at 227. However, the petitioner must also show the presence of additional circumstances indicating that the party obtaining the default judgment would gain an unfair, unjust, or unconscionable advantage if the judgment were not vacated. Smith, 114 Ill. 2d at 227-28. Here, there are no such circumstances. Although JP Morgan did not provide National City with notice of the entry of judgments of default and foreclosure, it did provide National City with notice of the hearing at which the judgments were entered. JP Morgan also provided notice of the foreclosure sale in the manner required by law, which included newspaper publication. Additionally, on February 16, 2006, JP Morgan recorded against the subject property a notice of foreclosure lis pendens. This notice recorded against the property provided National City with constructive notice of the foreclosure proceeding. See Knodle v. Jeffrey, 189 Ill. App. 3d 877, 883-84 (1989). Under these circumstances, we find no evidence that National City was hindered or prevented by JP Morgan from presenting its defense and conclude that a relaxation of the due diligence requirement was not appropriate in this case.

National City also asserts that it was not legally required to defend the instant case, because it was the senior lienholder. In support of its position, National City cites to authorities holding that a junior mortgagee's foreclosure proceeding cannot affect a senior mortgagee's lien interest, regardless of whether the senior mortgagee participates in the junior mortgagee's foreclosure proceeding. See, e.g., Heritage Federal Credit Union v. Giampa, 251 Ill. App. 3d 237, 238-39 (1993). Such a principle of law, however, does not affect our section 2--1401 analysis. Regardless

of the reason for National City's decision not to participate in the instant litigation, it may not obtain relief from orders that were entered as a result of its own negligence and disregard of the proceedings. See Smith, 114 Ill. 2d at 224-25. While National City may have other legal remedies that it may choose to pursue to recover on its note (see Giampa, 251 Ill. App. 3d at 238-39), its lack of diligence here foreclosed its opportunity to obtain relief from the judgments already entered. Thus, the trial court did not abuse its discretion in denying the section 2--1401 petition to vacate and in granting Pathfinder's motion to reconsider.

As its final contention, National City argues that, even if the trial court did not err in refusing to vacate the judgment of foreclosure, it nonetheless abused its discretion in confirming the foreclosure sale. National City argues that the winning bid of $32, 212.40 was less than 10% of the fair market value of the property and that such a low price was unconscionable and unjust.

As National City correctly notes, a judicial foreclosure sale is not complete until it has been approved by the trial court. Commercial Credit Loans, Inc. v. Espinoza, 293 Ill. App. 3d 923, 927 (1997). The high bid received at a judicial sale is merely an irrevocable offer to purchase the property, and acceptance of the offer takes place when the trial court confirms the sale. Espinoza, 293 Ill. App. 3d at 927. Under section 15--1508(b) of the Foreclosure Law, the trial court shall confirm the sale unless: (1) there has been a failure to give proper notice; (2) the terms of sale were unconscionable; (3) the sale was conducted fraudulently; or (4) justice was otherwise not done. 735 ILCS 5/15--1508(b) (West 2006). The trial court is justified in disapproving a judicially mandated foreclosure sale if unfairness is shown that is prejudicial to any interested party. Espinoza, 293 Ill. App. 3d at 927. The trial court has broad discretion to approve or disapprove a judicial foreclosure sale made at its direction. Espinoza, 293 Ill. App. 3d at 927.

Illinois courts have generally held that mere inadequacy of price is not a sufficient reason to disturb a judicial sale unless there were some other irregularities. Resolution Trust Corp. v. Holtzman, 248 Ill. App. 3d 105, 113-14 (1993). This rule is predicated upon a policy of providing stability and permanency to judicial sales and a realization that "property does not bring its full value at forced sales and that the price depends on many circumstances for which the debtor must expect to suffer a loss." Holtzman, 248 Ill. App. 3d at 114. Nonetheless, pursuant to section 15--1508(b) of the Foreclosure Law, the trial court is directed to conduct a hearing on the confirmation of the foreclosure sale and is empowered under certain circumstances to examine whether the terms of the sale were unconscionable. Holtzman, 248 Ill. App. 3d at 114. The extent of the hearing that the trial court must afford depends upon the circumstances. Holtzman, 248 Ill. App. 3d at 115. Following such a hearing, the trial court retains the discretion to disapprove a judicial sale " 'where the amount bid is so grossly inadequate that it shocks the conscience of a court of equity.' " Holtzman, 248 Ill. App. 3d at 113, quoting Levy v. Broadway-Carmen Building Corp., 366 Ill. 279, 288 (1937).

In Holtzman, the trial court confirmed a 1990 judicial sale in which the winning bid for a multi-unit apartment building was $414,800. The sale resulted in a deficiency in excess of $398,000 on the mortgage indebtedness. Holtzman, 248 Ill. App. 3d at 109. The winning bid was equal to only 34% of the fair market value of the subject property according to a 1988 appraisal, but was equal to 84% of the fair market value of the property according to a 1990 appraisal. Holtzman, 248 Ill. App. 3d at 115. On appeal, the mortgagor contended that the trial court erred in confirming the judicial sale. In reviewing this contention, the appellate court stated:

"We do not believe that the General Assembly intended to require an extended evidentiary hearing after each sheriff's sale. To determine the extent of the hearing to be

afforded the mortgagor, the court should look to the defendant's petition or motion, and if there is an allegation of a current appraisal or other current indicia of value which is so measurably different than the sales price as to be unconscionable, then a hearing should be afforded the defendant. On the other hand, if the allegation of unconscionability rests on an appraisal rendered remote in time, the requisite of a formal hearing is not required ***." Holtzman, 248 Ill. App. 3d at 115.

The reviewing court determined that evidence of the 1988 appraisal, as well as other evidence offered by the mortgagor of the existence of potential purchasers of the apartment units that would satisfy the mortgage obligation, required that the trial court conduct an evidentiary hearing on the question of the conscionability of the judicial sale. The reviewing court reversed the trial court's order confirming the judicial sale and remanded the case for limited discovery and an evidentiary hearing. Holtzman, 248 Ill. App. 3d at 115.

In Merchants Bank v. Roberts, 292 Ill. App. 3d 925, 931 (1997), this court relied upon Holtzman and determined that the mortgagors were entitled to an evidentiary hearing under section 15--1508(b) of the Foreclosure Law to determine the fairness of a judicial sale. The mortgagors provided personal affidavits indicating that the fair market value of the property at issue was $400,000, which was 50% greater than the amount secured at the judicial sale. Roberts, 292 Ill. App. 3d at 931. This court held that the mortgagors were entitled to such a hearing despite their failure to appear in court to defend against the proceeding until after the foreclosure sale had already occurred. Roberts, 292 Ill. App. 3d at 931.

In the instant case, as detailed above, National City offered two pieces of evidence to establish the fair market value of the subject property. National City provided a broker's price

opinion dated July 26, 2006, indicating that the fair market value of the property at issue was $385,000. National City also provided a copy of mortgagors' August 2005 bankruptcy petition indicating that the market value of the property at issue was $325,000. We agree with National City that the broker's opinion and mortgagors' own valuation of the property provided "current indicia of value" of the property. See Roberts, 292 Ill. App. 3d at 931 (noting that the owners of land are qualified to express an opinion of its value, merely by virtue of their ownership). The drastic difference between the current value of the property and the sale price of $32,212.40 supports National City's allegation of unconscionability, and we conclude that an evidentiary hearing was required under the authorities discussed above. See Roberts, 292 Ill. App. 3d at 931; Holtzman, 248 Ill. App. 3d at 115; see also Espinoza, 293 Ill. App. 3d at 928 (holding that bid at sheriff's sale that was one-sixth of the value of the property was an unconscionable disparity). The record reflects that the trial court did not conduct an evidentiary hearing on the motion to confirm the sale.

Additionally, contrary to Pathfinder's assertions, National City had the right to object to the confirmation of the sheriff's sale despite its status as a lienholder rather than a mortgagor. As a party to the litigation, National City had the authority under section 15--1508 of the Foreclosure Law to object to the sale and to be heard on its complaints that the sale price was unconscionable and that justice was not done. See generally Fleet Mortgage Corp. v. Deale, 287 Ill. App. 3d 385, 392 (1997) (noting that section 15--1508 requires the trial court to consider the interests of all interested parties before ruling on a petition to confirm a judicial sale). Moreover, National City was not precluded from objecting to the sale despite its failure to appear to defend the action until after the sale had already occurred. See Roberts, 292 Ill. App. 3d at 931. When National City appeared, the trial court had not yet heard or ruled upon JP Morgan's motion to confirm and approve the sale. National City

thus had the right to assert its objection to the terms of the sale on the basis that justice was not done. As already noted, National City adequately supported its objection with valuation evidence indicating that the winning bid at the sale was grossly disproportionate to the fair market value of the property. Under such circumstances, the trial court was obligated to conduct an evidentiary hearing to determine the conscionability of the sale and whether justice was done. See Holtzman, 248 Ill. App. 3d at 115. Notably, both JP Morgan and Pathfinder fail to specifically comment upon the applicability of the principles in Holtzman to the circumstances of this case. Therefore, for the reasons discussed, we vacate that portion of the trial court's order confirming the judicial sale and we remand the case for an evidentiary hearing in accordance with the provisions of section 15--1508 of the Foreclosure Law.

For the foregoing reasons, we affirm the trial court's order granting Pathfinder's motion to reconsider and its May 12, 2006, judgments of default and foreclosure. However, we vacate the trial court's order confirming the sheriff's sale and remand the case for an evidentiary hearing and for further proceedings in accordance with section 15--1508 of the Foreclosure Law.

Affirmed in part and vacated in part; cause remanded.

McLAREN and CALLUM, JJ., concur.