# Illinois Official Reports

## Appellate Court

---

**Wells Fargo Bank, N.A. v. Maka, 2017 IL App (1st) 153010**

---

| | |
|---|---|
| Appellate Court Caption | WELLS FARGO BANK, N.A., Plaintiff-Appellee, v. JAN MAKA, Individually, and as Trustee Under Provisions of a Trust Agreement Dated 11th Day of July, 2005, and Known as Trust Number 1; BRIDGEVIEW BANK GROUP; JOHN MAKASKA CUSTOM BUILT and/or OWNER; UNKNOWN BENEFICIARIES OF TRUST AGREEMENT DATED 11TH DAY OF JULY, 2005, and Known as Trust Number 1; VILLAGE OF SOUTH HOLLAND; W.L. ENGLER DISTRIBUTING, INC.; WILLIAM HOULIHAN; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, Defendants (Jan Maka, Individually, Defendant-Appellant). |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-3010 |
| Filed | February 3, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-11994; the Hon. Michael F. Otto, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Susan S. Barron, of Law Office of Susan S. Barron P.C., of Northfield, for appellant.<br><br>Lucia Nale, Michelle V. Dohra, Charles M. Woodworth, and Jeffrey J. VanDam, of Mayer Brown LLP, of Chicago, for appellee. |

| Panel | JUSTICE REYES delivered the judgment of the court, with opinion. Presiding Justice Gordon and Justice Lampkin concurred in the judgment and opinion. |

**OPINION**

¶ 1    This matter arises out of a mortgage foreclosure on a property owned by defendant Jan Maka. In numerous motions after summary judgment and judgment of foreclosure were entered in favor of plaintiff, Wells Fargo Bank, N.A., defendant raised the issue before the circuit court that his mortgage was void because the original lender, Alliance Mortgage Company d/b/a BNY Mortgage (Alliance) was not licensed at the time the loan was originated pursuant to the Residential Mortgage License Act of 1987 (License Act) (205 ILCS 635/1-1 *et seq.* (West 2012)). Defendant now appeals from the circuit court's orders (specifically the order of June 2015 denying his motion to vacate the judgment of foreclosure and sale and the order of September 2015 denying his motion to "reconsider, rehear and vacate" the court's June 2015 order). Defendant acknowledges that the License Act was amended in July 2015, but contends on appeal that that amendment is not applicable and the circuit court consistently failed to apply the law that existed at the time as set forth in *First Mortgage Co. v. Dina*, 2014 IL App (2d) 130567. Defendant maintains *Dina* is dispositive as it provided that a violation of the License Act results in a void mortgage. *Id.* ¶ 18. Defendant further asserts that any retroactive application of the amendment to the License Act is unconstitutional because it would divest him of his property rights without due process. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3    The property that is the subject of these foreclosure proceedings is commonly known as 8340 West Berwyn Avenue in Chicago, Illinois. In October 2002, defendant executed a mortgage in the amount of $274,000 in favor of Mortgage Electronic Registration Systems, Inc. as nominee for the lender, Alliance. Defendant also signed the note evidencing the loan was held by Alliance. The mortgage was later negotiated to plaintiff.

¶ 4    On May 6, 2013, plaintiff filed the instant complaint against defendant, among others, seeking to foreclose the mortgage. The complaint alleged that defendant had defaulted in payments due commencing August 1, 2012. Defendant subsequently appeared in court represented by counsel, answered the complaint, but set forth no affirmative defenses. Thereafter, plaintiff moved for summary judgment against him, as well as for default judgments against the other defendants and for a judgment of foreclosure.

¶ 5    Defendant, however, opposed the motion for summary judgment and asserted that the affidavit plaintiff submitted in support of its motion failed to comply with Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013) and Rule 113 (eff. May 1, 2013). Defendant further argued that he failed to receive either the grace period notice or the notice of acceleration and, therefore, entry of summary judgment in favor of plaintiff was barred. Plaintiff denied these claims, and the circuit court agreed with plaintiff. On February 18, 2015, orders of summary judgment, default, and judgment of foreclosure and sale were entered in plaintiff's favor.

¶ 6        On March 20, 2015, defendant filed a motion to vacate the judgment of foreclosure pursuant to section 2-1301(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1301(e) (West 2012)), alleging his mortgage was void and against public policy because the originator of the mortgage loan, Alliance, was not licensed pursuant to the License Act (205 ILCS 635/1-1 *et seq.* (West 2012)). In support of his motion, defendant relied on the Second District's decision in *Dina*, wherein the court held that a violation of the License Act results in a void mortgage. *Dina*, 2014 IL App (2d) 130567, ¶ 18. Defendant further attached the affidavit of attorney Carla Sherieves, in which she averred that she performed a search of the Illinois Department of Financial and Professional Regulation's website and generated the two documents attached to her affidavit. Those two documents, however, neither refuted nor affirmed whether Alliance was licensed at the time defendant's loan was originated.

¶ 7        On June 3, 2015, the circuit court, "being fully advised in the premises," deemed the motion to be a motion to reconsider and denied defendant's request. Shortly thereafter, defendant filed a motion to reconsider the denial of the court's June 3, 2015, order asserting the circuit court erred its application of existing law, again citing *Dina*. The circuit court ultimately denied this motion as well.

¶ 8        The property proceeded to judicial sale with Third Coast Holdings, LLC (Third Coast) as the highest bidder. Third Coast moved to intervene and have the sale of the property confirmed. The circuit court granted Third Coast's motion to intervene and allowed defendant time to respond to the motion to confirm the sale. In response, defendant asserted that justice was not otherwise done due to the circuit court's failure to follow the law as set forth in *Dina*. On August 26, 2015, the circuit court entered the order approving the sale.

¶ 9        Thereafter, defendant filed a motion to "reconsider, rehear and vacate" the June 3, 2015, order alleging the same basis as he previously asserted. On September 22, 2015, the circuit court denied the motion and this appeal followed.

¶ 10                                          ANALYSIS

¶ 11        On appeal, defendant maintains that because Alliance was not licensed in Illinois when the mortgage was originated his mortgage is void as against public policy and consequently the judgment of foreclosure was improperly granted.

¶ 12        Initially, we address the proper standard of review. Our standard of review is usually based on the procedural posture of the case. See, *e.g.*, *MB Financial Bank, N.A. v. Ted & Paul, LLC*, 2013 IL App (1st) 122077, ¶ 12 (reviewing the denial of a petition for relief from judgment of foreclosure and sale and order approving sale pursuant to section 2-1401 *de novo*). Here, defendant challenges (1) the circuit court's June 3, 2015, order denying his section 2-1301(e) motion in which he alleged that the judgment of foreclosure must be vacated because the original mortgage lender was not licensed pursuant to the License Act, and (2) the circuit court's September 22, 2015, order denying defendant's motion to reconsider the June 3, 2015, order.[1] Defendant argues on appeal that the circuit court improperly decided his section 2-1301(e) motion as a motion to reconsider, but asserts that regardless we must review these motions for an abuse of discretion. While both section 2-1301 motions to vacate and motions to reconsider are typically reviewed for an abuse of discretion (*Wells Fargo Bank, N.A. v.*

---

[1]We observe defendant does not challenge the circuit court's entry of summary judgment in favor of plaintiff, nor does defendant challenge the propriety of the entry of the order approving the sale.

*Simpson*, 2015 IL App (1st) 142925, ¶ 32; *JP Morgan Chase Bank v. Fankhauser*, 383 Ill. App. 3d 254, 259 (2008)), the primary issue raised by defendant on appeal (that a violation of the License Act renders his mortgage void) is a purely legal one and, thus, we review the issue *de novo* (see *Fankhauser*, 383 Ill. App. 3d at 259 (we review *de novo* the circuit court's determination of legal issues, even ones raised in a motion to reconsider)).

¶ 13 Turning to the case at hand, the License Act generally requires that certain entities involved in residential mortgage lending first obtain a license from the State of Illinois prior to engaging in any business activities. 205 ILCS 635/1-3(a) (West 2012). The License Act further sets forth numerous exemptions for this requirement, including but not limited to, entities engaged solely in commercial lending or individuals acting as mortgage loan originators who are not employed by or acting for any entity described in the section. *Id.* The consequences for violating the License Act include an injunction or a fine in an amount not to exceed $25,000. 205 ILCS 635/1-3(c), (e) (West 2012). The License Act further provides that, after written notice to a licensee by the Department of Financial and Professional Regulation, an entity may have its license revoked or suspended, or be placed on probation or reprimanded. 205 ILCS 635/4-5 (West 2012); see 205 ILCS 635/1-4(n) (West 2012) (stating that after April 6, 2009, all references in the Act to the "Commissioner" is a reference to the "Secretary of Financial and Professional Regulation" including "the Director of the Division of Banking of the Department of Financial and Professional Regulation"). The Department of Financial and Professional Regulation may further deny the issuance of a license on certain enumerated grounds. 205 ILCS 635/7-3 (West 2012). The licensee, however, may request a hearing before a hearing officer regarding that decision. 205 ILCS 635/4-12 (West 2012).

¶ 14 In support of his argument, defendant relies solely on the Second District case of *Dina*, which considered the question of whether a violation of the License Act would result in a void mortgage. *Dina*, 2014 IL App (2d) 130567, ¶ 18. For the reasons that follow, we find *Dina* is no longer viable in Illinois.

¶ 15 We first observe that the procedural posture of *Dina* varies from the procedural posture of the present case. In *Dina*, the defendants raised the issue that their mortgage lender was not licensed under the License Act in response to the plaintiff's motion for summary judgment. *Id.* ¶ 5. On appeal, the *Dina* court held that summary judgment was improperly entered against the defendants where there was a genuine issue of material fact regarding whether their mortgage lender was licensed under the License Act. *Id.* ¶ 13. Although the *Dina* court determined summary judgment was improvidently granted, it went on to consider the consequences of the mortgage lender's failure to establish it was not subject to the License Act and determined that such a failure would result in a void mortgage. *Id.* ¶ 18. In contrast, defendant here did not assert this claim until after the motion for summary judgment had already been granted and the judgment of foreclosure entered.

¶ 16 Second, in reaching its conclusion, the *Dina* court set forth the law as articulated in our supreme court's opinion *Chatham Foot Specialists, P.C. v. Health Care Service Corp.*, 216 Ill. 2d 366 (2005), namely that:

"'It is well settled that "courts will not aid a plaintiff who bases his cause of action on an illegal act." [Citation.] More specifically, "courts will not enforce a contract involving a party who does not have a license called for by legislation that expressly prohibits the carrying on of the particular activity without a license where the legislation was enacted for the protection of the public, not as a revenue measure."

- 4 -

[Citations.] Accordingly, a "contract made by an unlicensed individual calling for his personal services *** is unenforceable." [Citations.]' " *Dina*, 2014 IL App (2d) 130567, ¶ 18 (quoting *Chatham Foot Specialists, P.C.*, 216 Ill. 2d at 380-81).

The *Chatham* court, however, ultimately determined that section 12 of the Professional Service Corporation Act (805 ILCS 10/12 (West 2000)), which required professional service corporations to obtain a certificate of registration, "was not enacted as a regulatory measure to protect the public health, safety and welfare." *Chatham Foot Specialists, P.C.*, 216 Ill. 2d at 389. Notably, our supreme court reasoned in part that "nowhere in the [Professional Service Corporation] Act did the legislature suggest that contracts with an otherwise valid professional service corporation should be voided because the corporation did not maintain a current certificate of registration." *Id.* at 398.

¶ 17   The *Dina* court's determination regarding the License Act primarily rested on the legislature's statement that, " '[t]he purpose of this Act is to protect Illinois consumers seeking residential mortgage loans and to ensure that the residential mortgage lending industry is operating fairly, honestly and efficiently, free from deceptive and anti-competitive practices.' " *Dina*, 2014 IL App (2d) 130567, ¶ 19 (quoting 205 ILCS 635/1-2(b) (West 2006)). "A keystone principle of statutory construction is to view all provisions of a statutory enactment as a whole. Accordingly, words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute." *Chatham*, 216 Ill. 2d at 382 (citing *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000)). The *Dina* court failed to consider the License Act as a whole, for if it had, it would have found that, like the Professional Service Corporation Act at issue in *Chatham*, the legislature did not suggest in the License Act contracts with an otherwise valid entity should be voided because the entity did not maintain a license. See *Chatham*, 216 Ill. 2d at 398; 205 ILCS 635/1-1 *et seq.* (West 2012).

¶ 18   Moreover, after the Second District rendered its decision in *Dina* and while this matter was pending in the circuit court, legislation was enacted which clarified that the General Assembly did not intend for violations of the License Act to result in a void mortgage. Public Act 99-113, effective July 23, 2015, amended section 1-3(e) of the License Act, which now reads as follows:

> "A mortgage loan brokered, funded, originated, serviced, or purchased by a party who is not licensed under this Section shall not be held to be invalid solely on the basis of a violation under this Section. The changes made to this Section by this amendatory Act of the 99th General Assembly are declarative of existing law." 205 ILCS 635/1-3(e) (West Supp. 2015).

¶ 19   Given that the amendment became effective while this matter was pending in the circuit court, we must determine whether it applies to the facts before us. As aptly stated by our supreme court in *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 298-99 (2010):

> " 'A subsequent amendment to a statute may be an appropriate source for discerning legislative intent.' [Citation.] As we have explained, while an amendatory change in the language of a statute creates a presumption that it was intended to change the law as it previously existed, ' "the presumption is not controlling [citations] and may be overcome by other considerations." ' [Citation.] 'The circumstances surrounding the amendment should be considered and: "If they indicate that the legislature intended only to interpret the original act, the presumption of an intention to change the law is

- 5 -

rebutted." ' [Citation.] A number of factors may indicate whether an amendment is merely a clarification rather than a substantive change in the law: 'whether the enacting body declared that it was clarifying a prior enactment; whether a conflict or ambiguity existed prior to the amendment; and whether the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history.' [Citations.]"

¶ 20        We initially observe that the amendment stated in plain language that, "The changes made to this Section by this amendatory Act of the 99th General Assembly *are declarative of existing law.*" (Emphasis added.) 205 ILCS 635/1-3(e) (West Supp. 2015); see *Harris Bank St. Charles v. Weber*, 298 Ill. App. 3d 1072, 1080 (1998) (holding that an amendment made to the Code was merely a clarification of existing law where the legislature specified in the amendment that it was intended as a clarification of existing law and not as a new enactment). Moreover, this amendment is consistent with the preexisting provisions of the License Act which do not provide for any private remedies for violations of its licensing requirements, such as a private right of action or the right of a mortgagor to avoid a mortgage obtained by an unlicensed lender. See *Richardson v. JPMorgan Chase Bank, N.A. (In re Jordan)*, 543 B.R. 878, 883 (Bankr. C.D. Ill. 2016). Thus, as the amendment makes clear, there is not (and has never been) a right to void a mortgage that violates the Licensing Act.

¶ 21        Further, at the time when the General Assembly was considering House Bill 2814 (the bill which would become Public Act 99-113), *Dina* had been rendered just a year prior. No other precedential case law interpreting the Licensing Act had been issued. The existence of the judicial precedent in *Dina* serves to negate the presumption that the amendment to section 1-3(e) of the Licensing Act was a change in the law. See *Puss N Boots, Inc. v. Mayor's License Comm'n*, 232 Ill. App. 3d 984, 988 (1992) (the presumption does not apply where the legislature enacted an amendment "soon after" a judicial interpretation); *Pielet v. Pielet*, 2012 IL 112064, ¶ 48 (the legislature is presumed to be aware of judicial decisions interpreting legislation). It therefore follows that Public Act 99-113 was meant to clarify the previous law and make clear that a violation of the Licensing Act does not render a mortgage void. See *K. Miller Construction Co.*, 238 Ill. 2d at 300.

¶ 22        The legislative history supports this conclusion. During the debate on House Bill 2814, Representative Nekritz, one of the House sponsors of the bill, stated:

> " 'House Bill 2814 states the... that a mortgage is enforceable in Illinois regardless of whether the person issuing the... the mortgagor is licensed in Illinois. We have remedies for failure to license in Illinois through the Department of Financial and Professional Regulation, but that is... and that's the remedy that should remain. *This is to clarify* that the... *a change that resulted from an Appellate Court case*. So, I'd ask for your support.' " (Emphases added.) 99th Ill. Gen. Assem., House Proceedings, Mar. 17, 2015, at 27 (statements of Representative Nekritz).

The House debates further evidence the legislature's stance that the amendment did not serve to change the penalties or consequences for a violation of the Licensing Act:

> "Franks: 'So, this Bill would say that if you weren't licensed that the mortgage would still stand?'
>
> Nekritz: 'Correct.'
>
> Franks: 'Why would we do that?'

Nekritz: 'Well, it's a matter of certainty in the marketplace actually, because if the... you know, the mortgage is a record and if someone is... a title company or some other lienholder is relying on that, they ought to be able to rely on that public record and not have to go behind it and figure out whether they're... whether that individual's licensed. And again, we have the Department of Financial and Professional Regulation to enforce those, to impose a fine, do whatever the remedy is there, but someone borrowed the money and someone owes the money and we ought to be able to still enforce that.'

Franks: 'But this would not alleviate any penalties for someone who would sell or create a mortgage in Illinois who is not licensed to do so.'

Nekritz: 'That's correct. No, it does not impact any of that.' " *Id.* at 28 (statements of Representatives Franks and Nekritz).

¶ 23    In light of the foregoing, we conclude that Public Act 99-113 is a clarification of the prior statute and must be accepted as a legislative declaration of the meaning of the original provision in the Licensing Act. There is, therefore, no public policy requiring that mortgage contracts be held void when an entity is not licensed pursuant to the Licensing Act. See *K. Miller Construction Co.*, 238 Ill. 2d at 301. Accordingly, the circuit court correctly entered the judgment of foreclosure as well as the order approving the sale and correctly denied defendant's motions to vacate and reconsider.

¶ 24    Defendant also argues on appeal that the amendment of section 1-3(e) is unconstitutional because it violates the due process clause and deprived him of his vested property rights. Plaintiff correctly notes that defendant failed to raise this issue before the circuit court. It is well settled that a party that does not raise an issue in the trial court forfeits that issue and may not raise it for the first time on appeal. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14 (declining to consider an argument that party failed to raise before the trial and appellate courts). Indeed, our supreme court has emphasized the need for judicial restraint in this regard:

"[W]e believe it appropriate to caution courts of review—particularly when constitutional issues are involved—that they are not free rangers riding about the legal landscape looking for law to make. Judicial restraint is a principle of review that the justices of the Supreme Court strive to observe. *** Our precedent counsels such adherence as well. We expect appellate panels to do the same." *People v. White*, 2011 IL 109689, ¶ 153.

Thus, the *White* court explicitly found that it was inappropriate for the appellate court to address the defendant's constitutional contentions where the defendant's counsel chose not to raise such issues before the circuit court. *Id.* ¶¶ 153-54. Similarly, in this case, defendant failed to make any due process argument below. Accordingly, in light of the *White* decision, we shall not reach the merits of this forfeited issue.

¶ 25                                    CONCLUSION
¶ 26    For the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

¶ 27    Affirmed.