# Illinois Official Reports

## Appellate Court

---

*First Mortgage Co. v. Dina*, 2014 IL App (2d) 130567

---

| | |
|---|---|
| Appellate Court Caption | FIRST MORTGAGE COMPANY, LLC, Plaintiff-Appellee, v. DANIEL DINA and GRATZIELA DINA, Defendants-Appellants (Unknown Owners and Nonrecord Claimants, Defendants). |
| District & No. | Second District<br>Docket No. 2-13-0567 |
| Filed | March 31, 2014 |
| Modified upon denial of rehearing | May 22, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The summary judgment for foreclosure entered for plaintiff mortgagee and the order confirming the sale of defendants' property were vacated where plaintiff was not a licensed lender under the Residential Mortgage License Act, and the mortgage was therefore unenforceable and void as a matter of public policy. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 10-CH-2877; the Hon. Luis A. Berrones, Judge, presiding. |
| Judgment | Vacated and remanded. |

| Counsel on Appeal | George H. Olsen, of Rogers Law Group, of Deerfield, for appellants. |
|---|---|
| | Eleazar E. Calero, of Pierce & Associates, P.C., of Chicago, for appellee. |

| Panel | PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion. |
|---|---|
| | Justices Zenoff and Schostok concurred in the judgment and opinion. |

## OPINION

¶ 1     Defendants, Daniel and Gratziela Dina, appeal after the confirmation of the judicial sale of their property. They argue that the court improperly granted summary judgment for foreclosure in favor of plaintiff, First Mortgage Company, LLC; they assert, among other things, that they properly raised the defense that the mortgage lender, First Mortgage Company of Idaho, LLC (FMCI), was not a licensed lender under the Residential Mortgage License Act of 1987 (License Act) (205 ILCS 635/1-1 *et seq.* (West 2006)). We conclude that a material issue of fact existed concerning FMCI's status under the License Act and that this precluded a proper grant of summary judgment. We further conclude that the way defendants raised the defense, by a response in opposition to summary judgment, did not cause them to forfeit the defense; their defense amounted to a claim that the mortgage contract was contrary to public policy, and such a defense is not forfeited by a technical error in raising it. We therefore vacate the grant of summary judgment and the confirmation of the judicial sale and remand the cause.

¶ 2                           I. BACKGROUND

¶ 3     Plaintiff filed a foreclosure complaint relating to the property at 580 Christopher Drive, North Barrington, on May 21, 2010. It made Daniel Dina a defendant as the property owner and borrower. It also made Gratziela Dina, who had signed the mortgage, a defendant. The mortgage showed that the lender was FMCI; this was also the mortgagee according to the complaint. The original amount of the loan was $985,000. The note required a balloon payment of $991,566.67 on March 15, 2008. Defendants did not make this payment.

¶ 4     Defendants appeared through counsel and filed an answer and affirmative defenses. They denied that plaintiff was either the mortgagee or the successor in interest to the mortgagee. They also asserted that this same lack of demonstrated interest resulted in plaintiff's lacking standing. They further asserted that plaintiff had failed to mitigate its damages and to comply with federal obligations to consider whether defendants were eligible under modification programs. Finally, they asserted that plaintiff would receive greater benefits by modifying the loan than through foreclosure.

¶ 5        Plaintiff moved for summary judgment. As to the lack-of-standing defense, it asserted that, because lack of standing is an affirmative defense, defendants bore the burden of showing that plaintiff was not the mortgagee. However, plaintiff also provided a "Statement of Merger" filed with the Idaho Secretary of State that stated that, effective April 30, 2011, FMCI, a wholly owned subsidiary of plaintiff, was merged into plaintiff. Plaintiff also filed a "Reply to Defendant's Affirmative Defenses." Defendants, having missed the deadline to respond to the motion for summary judgment, sought additional time to respond. They filed a proposed response, supported by an exhibit, asserting that neither "First Mortgage Company of Idaho, LLC," nor "First Mortgage Company, LLC," was registered to do business in Illinois or was licensed under the License Act. Further, they asserted that plaintiff was attempting to collect insurance premiums despite defendants' having a paid casualty insurance policy. They asserted that plaintiff "has been prosecuting a wrongful foreclosure which should be dismissed with prejudice." The court allowed the filing.

¶ 6        Plaintiff replied. It first asserted that defendants could not raise new defenses in a response to a motion, so that the defenses were forfeited. It further argued that defendants were wrong on the merits. It argued that, under the Limited Liability Company Act (LLC Act) (805 ILCS 180/1-1 *et seq.* (West 2010)), an LLC's failure to register does not impair its contracts. Moreover, pursuing a legal proceeding does not constitute engaging in business within Illinois. Next, concerning defendants' assertions about its lack of a required license, it asserted that, as a "registered domestic entity with the National Information Center under the laws of Oklahoma," plaintiff (not FMCI) was a bank and thus was exempt from the licensing requirements of the License Act. The exhibit it attached in support of this states that plaintiff "was established as a Domestic Entity Other" on or as of January 1, 2007. Finally, it purchased insurance on the property because it received notice that defendants' coverage was going to lapse and it did not receive evidence of coverage from defendants.

¶ 7        The court granted the motion for summary judgment on August 14, 2012, and entered the judgment for foreclosure and sale the same day. On November 1, 2012, plaintiff filed a notice that the sale would take place on November 20, 2012.

¶ 8        Defendants, responding to a motion to confirm the sale that does not appear in the record, reasserted their claims that plaintiff was not properly registered and licensed. The court approved the report of sale on February 19, 2013. Defendants moved for reconsideration, reasserting the arguments they made in their objection to confirmation. The court denied the motion, and defendants timely appealed.

¶ 9                                          II. ANALYSIS

¶ 10       On appeal, defendants assert that neither plaintiff nor FMCI was a licensed mortgage lender or an exempt entity. They argue that, under the holding in *Carter-Shields v. Alton Health Institute*, 201 Ill. 2d 441 (2002), a contract made by an entity that lacked the proper license is void. They further assert that, as an unregistered LLC, plaintiff was barred by section 45-45 of the LLC Act (805 ILCS 180/45-45 (West 2010)) from bringing any civil action in Illinois. Alternatively, they argue that confirmation of the sale worked an injustice because an agreement to modify the loan would have been beneficial to both parties.

¶ 11       Plaintiff responds first that the claims based on the License and LLC Acts are procedurally barred. With regard to the Licensing Act, plaintiff, as detailed below, argues in the alternative that it is exempt from the Act's requirements. Finally, it argues that

defendants' claims about the sale's unreasonableness are insufficient to establish an abuse of discretion by the court in confirming the sale.

¶ 12    Defendants reply that their claims relating to the License and LLC Acts were timely in that plaintiff had an adequate opportunity to respond to them before the court entered judgment. They further argue that the public policy implications of a Licensing Act violation allow review even if their raising of the issue was procedurally flawed.

¶ 13    A court should grant summary judgment only "when the pleadings, depositions and affidavits on file demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law." *Forest Preserve District v. First National Bank of Franklin Park*, 2011 IL 110759, ¶ 62. Review of an order granting summary judgment is *de novo*. *Forest Preserve District*, 2011 IL 110759, ¶ 62. Here, defendants are correct in their License Act claim; that conclusion is determinative, so we need not consider defendants' other claims. A question of fact exists as to the mortgage lender's License Act status. Further, that fact is material. Although the issue of enforceability of a mortgage made by an entity lacking a needed license has not arisen in Illinois, Illinois law relating to other licenses and sister-state law concerning statutes analogous to the License Act make clear that a License Act violation results in an unenforceable contract. Finally, because the contract would be void as a matter of public policy, any technical flaw in the way defendants raised the defense did not result in forfeiture of the defense.

¶ 14    As below, plaintiff attempts to show that publicly available information establishes that it is exempt from the licensing requirements of the Licensing Act. Its full argument is as follows:

> "Pursuant to 205 ILCS [6]35/1-4(d) certain entities are exempt from the Licensing Act, including '… any bank, savings and loan association, savings bank, or credit union organized under the laws of this or any other state … .' [205 ILCS 635/1-4(d)(1)(iv) (West 2006).] Plaintiff is a domestic entity [other] as defined by the National Information Center ('NIC') under the laws of Oklahoma. The NIC goes on to define a domestic entity as an 'institution[ ] that engages in banking activities [usually] in connection with [the] business of banking [in the United States].' [Citation.] Pursuant to the NIC, the Plaintiff qualifies as a bank, and is exempt from the Licensing Act, as set forth in 205 ILCS 635/1-4[(d)(1)(iv)]."

¶ 15    This response is both irrelevant and unsupported by plaintiff's own sources. It is irrelevant because plaintiff is not the entity at issue. It is unsupported because, contrary to what plaintiff argues, the category of "domestic entity other," as used by the NIC,[1] does not establish that plaintiff is a bank.

¶ 16    Concerning the irrelevance of plaintiff's response, we note that the copy of the mortgage incorporated in the complaint shows that plaintiff did not make the loan; FMCI did. Under the License Act, "[n]o [nonexempt person or entity] shall engage in the business of

---

[1]According to the NIC's website:

> "The National Information Center (NIC) provides comprehensive information on banks and other institutions for which the Federal Reserve has a supervisory, regulatory, or research interest including both domestic and foreign banking organizations operating in the U.S. The NIC Public Web Site is an interface to the NIC data ***." http://www.ffiec.gov/nicpubweb/Content/HELP/HelpAboutNIC.htm (last visited Jan. 16, 2014).

brokering, funding, originating, servicing or purchasing of residential mortgage loans without first obtaining a license from the Commissioner [(now Secretary)]." 205 ILCS 635/1-3(a) (West 2006). Thus, it is FMCI's status that is relevant here, not plaintiff's.

¶ 17    Concerning the incorrectness of plaintiff's response, we note that the NIC recognizes and lists 38 types of entities, including "Member Banks"–all banks that are members of the Federal Reserve System, which includes all nationally chartered banks–and "Non-Member Banks"–"all Commercial Banks that are state-chartered and are NOT members of the Federal Reserve System" (http://www.ffiec.gov/nicpubweb/Content/HELP/Institution%20Type%20 Description.htm (last visited Jan. 17, 2014)). These definitions do not support plaintiff's contention that a "domestic entity other" is a bank.

¶ 18    Given that FMCI's status as an exempt entity is not established, we consider the consequences of a violation of the License Act. We agree with defendants that the violation results in a void mortgage. No Illinois decision directly addresses unlicensed mortgage lending. Defendants cite an apposite decision, *Carter-Shields*, which concerns unlicensed corporate practice of medicine. A similar decision with a rationale stated in terms that are more directly applicable is *Chatham Foot Specialists, P.C. v. Health Care Service Corp.*, 216 Ill. 2d 366 (2005). In *Chatham*, the supreme court stated:

> "It is well settled that 'courts will not aid a plaintiff who bases his cause of action on an illegal act.' [Citation.] More specifically, 'courts will not enforce a contract involving a party who does not have a license called for by legislation that expressly prohibits the carrying on of the particular activity without a license where the legislation was enacted for the protection of the public, not as a revenue measure.' [Citations.] Accordingly, a 'contract made by an unlicensed individual calling for his personal services *** is unenforceable.' [Citations.]

> On numerous occasions, Illinois courts have held that where a licensing requirement has been enacted not to generate revenue, but rather to safeguard the public by assuring them of adequately trained practitioners, the unlicensed party may not recover fees for services or otherwise enforce a contract. [Citations.]" *Chatham*, 216 Ill. 2d at 380-81.

¶ 19    The License Act was enacted to protect the public, and not to generate revenue. Section 1-2(b) (205 ILCS 635/1-2(b) (West 2006)) states that "[t]he purpose of this Act is to protect Illinois consumers seeking residential mortgage loans and to ensure that the residential mortgage lending industry is operating fairly, honestly and efficiently, free from deceptive and anti-competitive practices."

¶ 20    The majority of states that have addressed the enforceability of mortgages made by unlicensed mortgage lenders have concluded that they are void as against public policy and so unenforceable. In *Solomon v. Gilmore*, 731 A.2d 280 (Conn. 1999), the Connecticut Supreme Court considered that issue while addressing a statute that, like ours, did not explicitly address enforceability. In language notably similar to that in *Chatham*, it held that a court could not assist in the enforcement of a contract the purpose of which is to violate the law. *Solomon*, 731 A.2d at 289. Moreover, it reviewed the decisions of other states and held that that was the majority view. *Solomon*, 731 A.2d at 292-93. We note that the Supreme Court of Kentucky reached the opposite conclusion, holding that, had its legislature intended to make such contracts unenforceable, it could have said so. *Bennett v. Bourne*, 5 S.W.3d 124, 125-26 (Ky. 1999).

¶ 21      We follow *Chatham* and accept the reasoning in *Solomon*. We therefore conclude that a mortgage made by an entity that lacked authorization under the License Act to conduct such business is void as against public policy. As to the rationale of *Bennett*, we agree that a legislature has the ability to provide for the unenforceability of a contract made in violation of a licensing law. Nevertheless, we deem that, given the well-established common-law rule concerning licensing laws intended to protect the public, the legislature's explicit statement that a law has such a protective purpose says as much as an explicit unenforceability provision.

¶ 22      On rehearing, plaintiff argues that in *Dixon v. Mercury Finance Co. of Wisconsin*, 296 Ill. App. 3d 353 (1998), this court previously held that financing contracts are not void where the lender violated a licensing statute. In *Dixon*, the plaintiffs argued that certain motor vehicle financing contracts they entered into with the defendant were void because the defendant was not licensed in Illinois under the Sales Finance Agency Act (205 ILCS 660/1 *et seq.* (West 1994)) when the contracts were executed. This court held that the contracts were not void. We distinguished the Sales Finance Agency Act from those that were enacted to protect public health and safety, and we indicated that the specific remedy provisions in the Sales Finance Agency Act struck a balance between the competing policies of protecting the public and promoting the free flow of commence.

¶ 23      While the License Act also provides a private right of action for violations of lending procedures (205 ILCS 635/4-16 (West 2010)), the License Act is distinguished by the strong public-policy statement in section 1-2(b). There is no similar statement of purpose and policy in the Sales Finance Agency Act. To enforce mortgage contracts entered into by unlicensed and, therefore, unregulated lenders would abrogate the stated purpose of the License Act.

¶ 24      We must also address whether defendants forfeited the defense; as we noted, plaintiff asserts that the lack of a needed license is an affirmative defense that a defendant forfeits by failing to raise it in an answer.

¶ 25      Although defendants did improperly raise FMCI's lack of a required license, as a matter of public policy defendants did not forfeit the defense under the circumstances here. An affirmative defense should be raised in an answer, and, although a court may consider an affirmative defense raised by other means if the plaintiff does not object, the usual rule is that a defense so raised is forfeited. *Hanley v. City of Chicago*, 343 Ill. App. 3d 49, 54 (2003). However, courts *should* consider whether agreements are unenforceable as against public policy *even if no party raises the issue. First Trust & Savings Bank of Kankakee v. Powers*, 393 Ill. 97, 103 (1946) (a court of equity should refuse to enforce a provision that is against public policy even if no party has raised the point); *In re Marriage of Best*, 387 Ill. App. 3d 948, 951 (2009) ("A court may, and indeed *should*, consider *sua sponte* whether a contract provision violates public policy." (Emphasis in original.)). In this case, the defense is unlike an ordinary affirmative defense, such as one based on a statute of limitations; the difference is due to the public interest in the outcome. If the court should consider a matter *sua sponte*, *a fortiori* it should consider the matter when a party raises it in response to a motion. Of course, however the matter is raised, the plaintiff must have a fair opportunity to respond, but plaintiff did have that here.

## III. CONCLUSION

For the reasons stated, we conclude that the court erred in granting summary judgment for foreclosure. We therefore must vacate the foreclosure judgment. Of course, the order confirming the sale was a direct consequence of the foreclosure judgment and must be vacated as well. We remand the matter for further proceedings.

Vacated and remanded.