2017 IL App (2d) 170043
No. 2-17-0043
Opinion filed November 15, 2017

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| FIRST MORTGAGE COMPANY, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 10-CH-2877 |
| | ) | |
| DANIEL DINA; GRATZIELA DINA; | ) | |
| UNKNOWN HEIRS AND LEGATEES OF | ) | |
| DANIEL DINA, IF ANY; UNKNOWN | ) | |
| OWNERS; and NONRECORD CLAIMANTS, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Daniel Dina and Gratziela Dina, | ) | Luis A. Berrones, |
| Defendants-Appellants). | ) | Judge, Presiding. |

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Hutchinson and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    In this appeal, a follow-on to our decision in *First Mortgage Co. v. Dina*, 2014 IL App (2d) 130567 (*Dina I*), defendants Daniel Dina and Gratziela Dina appeal from a new foreclosure judgment and a new order confirming a judicial sale in favor of plaintiff, First Mortgage Co. (First Mortgage).    We now affirm.

¶ 2    In *Dina I*, we held, based on our interpretation of the Residential Mortgage License Act of 1987 (Act) (205 ILCS 635/1-1 *et seq.* (West 2006)), that, if the original mortgagee, First

Mortgage Company of Idaho, LLC (FMCI), lacked a license required by the Act, the Dina's mortgage (which First Mortgage had acquired from FMCI) would be void. Based on uncertainty about FMCI's licensure status, we vacated a prior foreclosure judgment and sale and remanded the cause. In the period between the remand and the new foreclosure judgment, the General Assembly passed Public Act 99-113 (eff. July 23, 2015) (the amendment), which amended the Act so as to reject the holding in *Dina I*. On remand, the trial court granted judgment in favor of First Mortgage based not on the amendment but on its ruling that the Act was inapplicable to FMCI because FMCI did not engage in business in Illinois. We hold that the Act was applicable to FMCI, but we affirm on the basis that, as a result of the amendment, an exception to the law-of-the-case doctrine applies here.

¶ 3                                    I. BACKGROUND

¶ 4      On May 21, 2010, First Mortgage filed a complaint to foreclose a property in North Barrington. The named defendants were Daniel Dina, the property owner and borrower, and Gratziela Dina, who had cosigned the mortgage. The mortgage was dated November 16, 2007. The Dinas filed an answer with affirmative defenses, one of which was that First Mortgage lacked standing, as it was neither the original mortgagee, which was FMCI, nor FMCI's successor in interest. First Mortgage moved for summary judgment. It responded to the lack-of-standing defense by, among other things, filing a "Statement of Merger" filed with the Idaho Secretary of State. The statement showed that, effective April 30, 2011, FMCI, First Mortgage's wholly owned subsidiary, had merged into First Mortgage. The Dinas, having missed the deadline to respond to the motion for summary judgment, sought leave to file a late response in which they asserted, among other things, that neither First Mortgage nor FMCI was licensed under the Act. The court allowed the filing.

¶ 5      First Mortgage responded that, as a "registered domestic entity with the National Information Center under the laws of Oklahoma," it was a bank and thus was exempt from the licensing requirements of the Act.   The exhibit attached in support states that First Mortgage "was established as a Domestic Entity Other" on or as of January 1, 2007.

¶ 6      The court granted the motion for summary judgment on August 14, 2012, and entered the judgment for foreclosure and sale the same day.   The property was sold and the court confirmed the sale, over the Dinas' objection, on February 19, 2013.   After the court denied the Dinas' motion for reconsideration, they appealed.

¶ 7      We addressed three questions on appeal: (1) whether the Dinas' lack-of-licensure defense was procedurally forfeited; (2) whether there was a question of material fact as to FMCI's licensure; and (3) whether the lack of a required license was a defense to foreclosure.   *Dina I*, 2014 IL App (2d) 130567, *passim*.   We vacated the summary judgment and ensuing orders, stating in summary that a question of material fact had existed as to FMCI's status under the Act (*Dina*, 2014 IL App (2d) 130567, ¶ 13), with the following being our main intermediate holdings:

> (1) First Mortgage failed to demonstrate that the entity that made the mortgage was exempt from the Act.   *Dina*, 2014 IL App (2d) 130567, ¶ 14.

> (2) "[A] mortgage made by an entity that lacked authorization under the *** Act to conduct *** business [requiring such authorization] is void as against public policy."   *Dina*, 2014 IL App (2d) 130567, ¶ 21.

> (3) The Dinas raised their lack-of-licensure defense by the wrong means, but, because the issue implicated public policy, and because First Mortgage had a full opportunity to respond, they did not forfeit the defense.   *Dina*, 2014 IL App (2d) 130567, ¶ 25.

On the first point, some explanation is necessary. On appeal, First Mortgage argued that the Dinas' argument failed because public records showed that *it* was a bank and thus exempt from the Act. Whether First Mortgage was a bank was of course not relevant to whether FMCI was a bank. Thus, First Mortgage had failed to show that the entity that made the mortgage was exempt from the Act. Therefore (on March 31, 2014), we vacated the order for summary judgment, the foreclosure judgment, and the order approving the sale, and we remanded the matter for further proceedings. (We made modifications not relevant here when we denied rehearing on May 22, 2014.) First Mortgage petitioned for leave to appeal to our supreme court, but the court denied leave on September 24, 2014. *First Mortgage Co. v. Dina*, No. 117903 (Ill. Sept. 24, 2014).

¶ 8 On May 13, 2015, First Mortgage moved in the trial court for additional time to file a new motion for summary judgment. It gave the following reason:

> "Subsequent to the entry of [a scheduling order] Plaintiff learned that there is presently pending in the Illinois legislature HB2814, a bill that, if passed, will be dispositive of the primary legal issue in this case. *The bill will have the effect of reversing the Illinois Appellate Court's decision in this case*, by establishing that a loan contract is not rendered void by virtue of the fact that the originator was not licensed under the [Act]." (Emphasis added.)

The court gave First Mortgage until July 8, 2015, to file a new motion for summary judgment.

¶ 9 On July 8, 2015, First Mortgage filed a new motion for summary judgment, despite the continued pendency of the amendment to the Act in the General Assembly. It asserted two bases for the mortgage's validity. One, it anticipated that the General Assembly would pass the amendment, which would " 'reveal the legislature's intent in enacting [the] statute' " (quoting

*Daley v. Zebra Zone, Lounge, Inc.*, 236 Ill. App. 3d 511, 515 (1992)). Alternatively, it argued that, by the terms of sections 1-3(a) and 1-3(h) of the Act (205 ILCS 635/1-3(a), (h) (West 2006)), the Act "only applies to entities engaged in the business of residential mortgage lending in Illinois." Further, as an affidavit established, "the only loan FMCI ever made in the State of Illinois was the loan at issue in this case."

¶ 10    On July 23, 2015, the General Assembly approved Public Act 99-113, which amended section 1-3(e) of the Act to provide:

> "A mortgage loan brokered, funded, originated, serviced, or purchased by a party who is not licensed under this Section shall not be held to be invalid solely on the basis of a violation under this Section. The changes made to this Section by this amendatory Act of the 99th General Assembly are declarative of existing law." Pub. Act 99-113, § 5 (eff. July 23, 2015) (amending 205 ILCS 635/1-3(e)).

¶ 11    On September 10, 2015, the Dinas filed their response. They argued that the lack-of-licensure defense remained viable for two reasons:

> (1) Our holdings in *Dina I* created law of the case that barred First Mortgage from asserting that the Act was inapplicable to FMCI.

> (2) The amendment was constitutionally defective to the extent that it was to apply retroactively here.

¶ 12    The court granted First Mortgage's motion on February 11, 2016. It identified five issues as raised in the parties' briefing:

> (1) Whether *Dina I* created law of the case that barred First Mortgage from attempting to show that the Dinas' mortgage is not void.

- 5 -

(2) Whether—given unrebutted evidence that FMCI had originated only one transaction in Illinois—the Act required FMCI to be licensed.

(3) "Whether retroactive application of the amendment \*\*\* violates the Illinois Constitution's prohibition against retroactively applying amendments to existing statutes."

(4) Whether the amendment violated Illinois separation-of-powers principles by "attempting to directly reverse" *Dina I*.

(5) Whether the amendment violated the Illinois Constitution's special-legislation clause by "attempting to create a separate class of brokers for special treatment."

The court reasoned that it should address the Dinas' constitutional challenges to the amendment only if it could not resolve the issues on nonconstitutional grounds: "Since the \*\*\* Act does not apply to this case, the Court does not have to resolve the Dinas' constitutional challenges to the \*\*\* Act's amendment." The court then addressed the first two issues, answering "no" to both.

¶ 13    In ruling that the Act did not apply to FMCI, it concerned itself with only section 1-3(a), which, in relevant part, states:

"No person, partnership, association, corporation or other entity shall *engage in the business of brokering, funding, originating, servicing or purchasing of residential mortgage loans without first obtaining a license* from the Commissioner in accordance with the licensing procedure provided in this Article I \*\*\*. The licensing provisions of this Section shall not apply \*\*\* to any person, partnership association, corporation or other entity exempted pursuant to Section 1-4, subsection (d), of this Act \*\*\*." (Emphasis added.)    205 ILCS 635/1-3(a) (West 2006).

The court construed the phrase, "engage in the business," to exclude isolated transactions. It found that "First Mortgage ha[d] presented uncontroverted evidence that the Dinas' mortgage loan was an isolated transaction in Illinois for [FMCI]." It therefore concluded that FMCI had not engaged in business such that section 1-3(a) required that it get a license.

¶ 14    Additionally, citing *Hoffmann v. Hoffmann*, 125 Ill. App. 3d 548, 552 (1984), the court found that an exception to the law-of-the-case doctrine exists when the legislature makes a change to the controlling law.

¶ 15    The court granted First Mortgage's motion for summary judgment and entered a foreclosure judgment. The matter proceeded to a judicial sale and confirmation of the sale without either party raising matters that we need address here. The Dinas timely appealed.

¶ 16                                    II. ANALYSIS

¶ 17    In this appeal, the Dinas make four arguments:

(1) The court erred in holding that, because the Dinas' mortgage was the only mortgage that FMCI made in Illinois, FMCI was not subject to the Act's licensure requirement.

(2) The amendment "violates the Illinois constitutional prohibition against retroactive application of amendments to existing legislation."

(3) Because the amendment was an attempt by the General Assembly to nullify or reverse *Dina I*, it was a violation of separation of powers.

(4) The amendment "violate[s] the Special Legislation Clause of the Illinois Constitution, Article IV, Section 13, by attempting to create a separate class of brokers for special treatment."

We note that only the first of these arguments addresses the trial court's rationale for granting summary judgment; the remaining three appear to anticipate First Mortgage arguing that the amendment is an alternative basis for affirmance. The Dinas ask us to vacate the grant of summary judgment, the foreclosure judgment, and the order confirming the sale. They further ask that we remand with instructions that the court dismiss the case with prejudice.

¶ 18    In its response, First Mortgage argues, among other things, that (1) the court did not err when it ruled that FMCI did not need to be licensed under the Act and (2) the Dinas' constitutionality arguments are "superfluous" because "the amendment merely clarified what has always been true: there is not, and has never been, a right to void a mortgage that secures a loan made by a lender that was in violation of the *** Act."

¶ 19    The Dinas have not filed a reply.

¶ 20    We first address the issue of the Act's applicability to FMCI. Like the trial court, we must dispose of a matter without addressing constitutional issues when that is possible. *People v. Hampton*, 225 Ill. 2d 238, 243-44 (2007). Here, it is not. Contrary to what First Mortgage argues, the Act applies to entities engaged in the business of brokering, funding, originating, servicing, or purchasing residential mortgage loans, without any exemption for an entity that does so in rare or isolated instances. Because an issue of statutory interpretation is one of law, our review is *de novo*. See, *e.g.*, *Moon v. Rhode*, 2016 IL 119572, ¶ 22.

¶ 21    Section 1-3(a) is the primary section setting out the Act's scope. It states: "No person, partnership, association, corporation or other entity shall engage in the business of brokering, funding, originating, servicing or purchasing of residential mortgage loans without first obtaining a license from the Commissioner ***." 205 ILCS 635/1-3(a) (West 2006). This section says nothing about "engaging in business" *in Illinois*. The section nevertheless has an implicit

territorial limitation: Illinois has a "long-standing rule of construction *** which holds that a 'statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.' " *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 184-85 (2005) (quoting *Dur-Ite Co. v. Industrial Comm'n*, 394 Ill. 338, 350 (1946)). That rule of construction does not answer the question of when the statute is violated: does it require regularly engaging in business in Illinois, or does it require only regularly engaging in business, some of which takes place in Illinois? As a general matter of construction, we think that an isolated-transaction exemption is implausible. In a regulatory context, nomadic "fly-by-night" operations are an obvious concern, so we would not expect to see a rule of construction that works against punishment for entities that have established courses of business but attempt to avoid regulatory attention by limiting contact with any one state. Thus, if First Mortgage is to find an isolated-transaction exemption within the Act, section 1-3(a) is not going to be its source.

¶ 22    First Mortgage argues that section 1-3(h) creates such an exemption. We do not agree. That section, referring to "[a]n Act to provide for the regulation of mortgage bankers" (Ill. Rev. Stat. 1985, ch. 17, ¶ 2301 *et seq.* (the Old Act)), states:

> "This Act applies to all entities doing business in Illinois as residential mortgage bankers, as defined by [the Old Act], regardless of whether licensed under that or any prior Act. Any existing residential mortgage lender or residential mortgage broker in Illinois whether or not previously licensed, must operate in accordance with this Act." 205 ILCS 635/1-3(h) (West 2006).

Section 1-3(a) sets the scope of the Act. Thus, if section 1-3(h) is not superfluous, then, given its setting within the Act, it must be a statement of the effect under the Act of an entity's status

under the Old Act.   In particular, it must tell an entity that, if it was licensed under the Old Act, or if it should have been so licensed, then it *must* be licensed under the Act.   It is therefore a warning that on no account should the transition from the Old Act to the current one be treated as creating new exemptions.

¶ 23    The Dinas direct our attention to section 1-4(d) of the Act (205 ILCS 635/1-4(d) (West 2006)), suggesting that it militates strongly against reading any part of section 1-3 to create an isolated-incident exemption.   We agree.   First, this is consistent with the overall structure of the Act.   Section 1-3(a) itself states that "licensing provisions of this Section shall not apply *** to any person, partnership association, corporation or other entity exempted pursuant to Section 1-4, subsection (d), of this Act."   205 ILCS 635/1-3(a) (West 2006).   More critically, section 1-4(d) specifically exempts some isolated transactions:

" 'Exempt person or entity' shall mean the following:

* * *

(2) Any person or entity that does not originate mortgage loans in the ordinary course of business, making or acquiring residential mortgage loans with his or her or its own funds for his or her or its own investment without intent to make, acquire, or resell more than 10 residential mortgage loans in any one calendar year."   205 ILCS 635/1-4(d)(2) (West 2006) (recodified as amended at 205 ILCS 635/1-4(d)(1.8) (West 2016)).[1]

Notably, this language describes an exhaustive list, stating " 'Exempt person or entity' shall mean," not " 'Exempt person or entity' shall *include*."   See 205 ILCS 635/1-4(d) (West 2016).

---

[11] As amended, the section now limits "intent" to 3, rather than 10, mortgages.   205 ILCS 635/1-4(d)(1.8) (West 2016).

Thus, the legislature intended for the list to be comprehensive. Moreover, that it included an exemption for an entity not involved in transactions regulated by the Act in the ordinary course of business shows that it addressed itself to the matter of isolated transactions.

¶ 24 As FMCI was not exempt from the Act, we must address the Dinas' constitutional challenges to the application of the amendment in this case on remand. We first address the Dinas' claim that the amendment violated the special-legislation clause of the Illinois Constitution (Ill. Const. 1970, art. IV, § 13); it did not. We then move on to the interrelated issues of whether the amendment was unacceptably retroactive and whether it violated separation-of-powers principles. We conclude that the amendment can be read to avoid any constitutional defects. However, First Mortgage asks us to read it as outright reversing *Dina I*, even as it applies to this case. That reading encroaches on judicial powers.

¶ 25 The Dinas argue that the amendment violated the special-legislation clause of the Illinois Constitution by singling out the class of unlicensed mortgage brokers for special and favorable treatment as compared to licensed mortgage brokers. We disagree. "The special legislation clause expressly prohibits the General Assembly from conferring a special privilege or benefit upon a person or group of persons while excluding others similarly situated." *Allen v. Woodfield Chevrolet, Inc.*, 208 Ill. 2d 12, 21 (2003). We use a two-prong test to decide whether an amendment violates the clause: it does so only if (1) it "discriminate[s] in favor of a select group" and (2) the "classification created by the statutory amendment[ ] is arbitrary." *Allen*, 208 Ill. 2d at 22. "A special legislation challenge generally is judged under the same standards applicable to an equal protection challenge." *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 393 (1997). Thus, for an amendment such as this one, which does not affect a fundamental right or involve a suspect or quasi-suspect classification, we use the rational-basis test of equal-protection jurisprudence.

*Best*, 179 Ill. 2d at 393. The Dinas argue that the amendment "gives 'special treatment' to unlicensed residential mortgage brokers who are given a 'free pass' until caught, avoid paying licensing fees under the *** Act and thereby have an unfair advantage in competing with legitimate licensed mortgage brokers." But the amendment does not give special treatment to such brokers; it merely prevents them from suffering forfeitures. The General Assembly had a rational basis to conclude that voiding a mortgage made by a lender lacking a required license is an excessively harsh result when the Act provides for other penalties. See 205 ILCS 635/1-3(e) (West 2016) ("Any person, partnership, association, corporation or other entity who violates any provision of this Section commits a business offense and shall be fined an amount not to exceed $25,000."). It is thus absurd to suggest that, by rejecting voidness as the outcome of lack of licensure, the General Assembly created an unacceptable form of favorable treatment for unlicensed brokers.

¶ 26     Citing, among other things, *Hamilton County Telephone Cooperative v. Maloney*, 151 Ill. 2d 227 (1992), and *Roth v. Yackley*, 77 Ill. 2d 423 (1979), the Dinas argue that the amendment violated separation-of-powers principles and usurped the powers of the judiciary when it purported to offer a conclusive interpretation of the prior version of the Act. They further argue that it violated constitutional principles barring retroactivity. First Mortgage argues that no constitutional questions exist as to the amendment's validity, as it "merely clarified what has always been true: there is not, and has never been, a right to void a mortgage that secures a loan made by a lender that was in violation of the *** Act." Neither party is entirely correct here. The Dinas are correct that the General Assembly cannot make itself the ultimate arbiter of what the Act meant before it was amended, and First Mortgage is thus incorrect that the amendment reverses *Dina I* in the way our supreme court could. However, the Dinas are incorrect that the

amendment is fatally flawed and without effect. The problems that the Dinas recognize can be avoided by reading the "declarative of existing law" clause (205 ILCS 635/1-3(e) (West 2016)) as an ordinary statement of the law's retroactivity.

¶ 27 At the outset, we reject the Dinas' implication that Illinois has a general bar on amendments with retroactive effect. That no such bar exists is clear from the well-established analysis we use to determine whether an Illinois enactment has retroactive effect. See *In re Marriage of Duggan*, 376 Ill. App. 3d 725, 728-30 (2007). Illinois has adopted the basic principles of the Supreme Court's two-part retroactivity analysis in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). See *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 39 (2001). But, due to the effect of section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2016)), this is effectively a one-step test when applied to an Illinois enactment. The first step is to decide whether the legislature explicitly stated the extent of the statute's retroactivity; any express statement of intent controls, unless the retroactivity is unconstitutional for other reasons. *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 330 (2006). The second step, applicable when the legislative intent is not clear, is to decide whether the amendment would "impair rights a party possessed when acting, increase[ ] a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Allegis*, 223 Ill. 2d at 331. If the amendment has such an effect, it must not be applied retroactively. *Allegis*, 223 Ill. 2d at 331, 337. Section 4, however, supplies what amounts to a default statement on retroactivity, applicable when the General Assembly has failed to speak on the point. The section 4 default rule is that amendments "that are procedural may be applied retroactively, while those that are substantive may not." *Allegis*, 223 Ill. 2d at 331. Thus, the rule for an Illinois amendment is that we apply any express

statement of retroactivity or, if none, apply section 4. We would not need a retroactivity analysis if the answer were simply that retroactive amendments are always unconstitutional.

¶ 28    We note that *Roth* contains statements that seem to support the Dinas' position. *Roth*, which we discuss more below, addressed the General Assembly's attempt to add retroactively to the potential penalties for a criminal offense. *Roth*, 77 Ill. 2d at 425-26. That attempt fell into the category of retroactivity that is patently unconstitutional for other reasons. See, *e.g.*, *People v. Cornelius*, 213 Ill. 2d 178, 207 (2004) ("Retroactive application of a law that inflicts greater punishment than did the law that was in effect when the crime was committed is forbidden by the *ex post facto* clauses of the United States Constitution."). *Roth* thus should not be taken as making a general statement that all amendments with retroactive effect are prohibited.

¶ 29    The Dinas argue that the amendment "contains no clear expression that the statute is to be applied retroactively." We do not agree. The amendment's provision that "[t]he changes made to this Section *** are declarative of existing law" (Pub. Act 99-133, § 5 (eff. July 23, 2015)) plainly states an intent to give the amendment maximal retroactive effect. That phrasing, however, brings us back to the rule in *Maloney* and *Roth*.

¶ 30    The rule in *Maloney* and *Roth* bars the General Assembly from dictating the judicial interpretation of a statute already in existence: " '[W]hile the General Assembly can pass legislation to prospectively change a judicial construction of a statute if it believes that the judicial interpretation was at odds with legislative intent ([*Roth*], 77 Ill. 2d at 429), *it cannot effect a change in that construction by a later declaration of what it had originally intended*' (*People v. Rink*[, 97 Ill. 2d 535, 541 (1983)])." (Emphasis added.) *Maloney*, 151 Ill. 2d at 233 (quoting *Bates v. Board of Education*, 136 Ill. 2d 260, 267 (1990)). This is a matter of the "separation of powers embodied in article II, section 1, of the Illinois Constitution of 1970." *Roth*, 77 Ill. 2d at

429.   It is also a matter of logic; as the *Roth* court stated, "it is logically difficult to perceive how the declaration and the amendments by the 80th General Assembly can be simply a clarification of the intent of the 77th General Assembly which originally enacted the statute seven years earlier since only a fraction of the individuals who comprised the General Assembly were the same at both times."   *Roth*, 77 Ill. 2d at 428.   That reasoning applies equally here; before the amendment, section 1-3 was last amended by Public Act 97-143, which was approved and effective on July 14, 2011, and which did not relate to the issue here.   See Pub. Act 97-143 (eff. July 14, 2011).   The relevant portions have been in place since the 1980s.   See Ill. Rev. Stat. 1987, ch. 17, ¶ 2321-3. To be sure, as First Mortgage points out, decisions in other appellate districts had rejected our interpretation of the Act.   See, *e.g.*, *Nationstar Mortgage LLC v. Missirlian*, 2017 IL App (1st) 152730, ¶ 15 ("there is no right to avoid a mortgage that violates the *** Act").   That circumstance did not give the General Assembly the power to make a definitive interpretation; the power to resolve disagreement among the appellate courts rests with our supreme court.   See *In re Marriage of Gutman*, 232 Ill. 2d 145, 149-50 (2008).

¶ 31    If the General Assembly could not claim to be interpreting prior law, can its statement nevertheless permissibly serve as a statement of retroactivity?   It can.   We must presume that challenged legislation is constitutional; moreover, we must construe legislation so as to uphold its constitutionality "if we can reasonably do so."   *Kakos v. Butler*, 2016 IL 120377, ¶ 9.   Moreover, when we interpret a statute, we must, above all else, "ascertain and give effect to the true intent of the legislature."   *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 20.   The intent here was unmistakably to give the amendment fullest possible retroactive effect.   *If the retroactivity is not otherwise constitutionally objectionable*, the difference between a statement that an amendment is declarative of existing law and one that it

should have full retroactive scope is one of form only. However, as *Maloney* stated, the limitation is that the General Assembly may " 'pass legislation [only] to *prospectively* change a judicial construction of a statute.' " (Emphasis added.) *Maloney*, 151 Ill. 2d at 233 (quoting *Roth*, 77 Ill. 2d at 429). Any claim to *reverse* a decision stating a judicial construction therefore *is* constitutionally objectionable. Thus, the amendment by itself does not bar the application of *Dina I*. However, *we* have the power to depart from that decision, and we exercise it here.

¶ 32 The Dinas ask us to reverse the grant of summary judgment and remand the matter with instructions to dismiss the foreclosure action with prejudice. Were we to hold to *Dina I* as the law of the case, we would necessarily do as the Dinas ask. But we decline to do so; as the trial court suggested, the law-of-the-case doctrine need not apply when there has been an intervening change in the law. Moreover, by declining to apply *Dina I*, we avoid an inequitable result.

¶ 33 "Under the law of the case doctrine, questions of law decided on a previous appeal are binding on the trial court on remand as well as on the appellate court on a subsequent appeal." *Norris v. National Union Fire Insurance Co. of Pittsburgh*, 368 Ill. App. 3d 576, 580 (2006). Illinois courts have commonly recognized two exceptions to the doctrine: "(1) when a higher reviewing court, subsequent to the lower court's decision, makes a contrary ruling on the same issue; and (2) when a reviewing court finds its prior decision was palpably erroneous." *Norris*, 368 Ill. App. 3d at 581. The trial court here, citing *Hoffmann*, a Third District decision, suggested the existence of a third exception, to apply when the legislature changes the applicable law. The *Hoffmann* court stated, "We are of the opinion that a legislative change in the law during the pendency of multiple appeals would have the same effect as a contrary law announced by the Illinois Supreme Court." *Hoffmann*, 125 Ill. App. 3d at 552.

¶ 34    The exception that the *Hoffmann* court proposed is a variant of an exception recognized in both federal courts and other states' courts.   See *United States v. Charles*, 843 F.3d 1142, 1145 (6th Cir. 2016) ("Courts need not adhere to the law of the case in the face of an intervening change in law, new evidence, or a manifest injustice."); *Kathrein v. City of Evanston*, 752 F.3d 680, 685 (7th Cir. 2014) (the rule that law-of-the-case yields to a contrary decision by the Supreme Court is an "example of a generally accepted occasion for disturbing settled decisions in a case: when there has been an intervening change in the law underlying the decision"); *Amen v. City of Dearborn*, 718 F.2d 789, 794 (6th Cir. 1983) ("there is a well-recognized exception that the doctrine must yield to an intervening change of controlling [statutory] law between the date of the first ruling and the retrial"); *McClelland v. McClelland*, 393 N.W.2d 224, 226-27 (Minn. Ct. App. 1986).   As the *McClelland* court explained, the exception itself has exceptions; it does not apply when applying the new law "would alter rights that had matured or become unconditional, would impose new and unanticipated obligations on a party, or would work some other injustice due to the nature and identity of the parties."   *McClelland*, 393 N.W.2d at 226-27.

¶ 35    We deem that the *Hoffman* court was correct in recognizing that a change in statutory law is an exception to the law-of-the-case doctrine.   Indeed, this case shows why the exception is valuable.   In *Dina I*, in concluding that a mortgage made by an unlicensed lender is void, we placed great weight on what we deemed to be this state's existing public policy.   That is, we concluded that the policy required that, should FMCI prove to have lacked a needed license, First Mortgage must forfeit any lien.   Regardless of the correctness of our determination, though, the amendment makes clear that this state's *current* public policy does not require such a forfeiture. To require the forfeiture in spite of the current policy is not an equitable result.

¶ 36    In recognizing the intervening-change-in-law exception, we also recognize the exceptions to the exception, as noted in *McClelland*.    Taken with those exceptions, the intervening-change-in-law exception, as a limitation imposed by courts themselves, is wholly consistent with the separation-of-powers principles of *Maloney* and *Roth*.    Further, the exceptions to the exception allow the law-of-the-case doctrine to continue to serve three of its central functions: " 'to protect settled expectations of the parties, *** [to preserve] consistency during the course of a single case' " (*Norris*, 368 Ill. App. 3d at 581 (quoting *Petre v. Kucich,* 356 Ill. App. 3d 57, 63 (2005))), and "to maintain the prestige of the courts" (*Norris*, 368 Ill. App. 3d at 581).

¶ 37    As we have already suggested, we do not deem that any of the exceptions to the exception apply here.    The Dinas did not have a matured or unconditional right to a lien-free interest in the property.    *Dina I* did not declare the mortgage void, but merely vacated the summary judgment in favor of First Mortgage.    Declining to apply *Dina I* does not impose new and unanticipated obligations on the Dinas.    They merely continue to be in the position in which the trial court left them.    Declining to apply *Dina I* does not work any other injustice.    As we explained, the opposite is true, as, by applying the intervening-change-in-law exception, we avoid a forfeiture not mandated by Illinois's current public policy.

¶ 38                                III. CONCLUSION

¶ 39    On these grounds, we affirm the trial court's judgment.    See *Suchy v. City of Geneva*, 2014 IL App (2d) 130367, ¶ 19 ("we review the trial court's judgment, not its reasoning, and we may affirm on any grounds in the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct").

¶ 40    Affirmed.